Leon Eric **LOPEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 14–04–01040–CR.

Court of Appeals of Texas, Houston (14th Dist.).

July 25, 2006.

James M. Leitner, Houston, for appellant.

Peyton Peebles, III, Houston, for state.

Panel consists of Justices ANDERSON, EDELMAN, and FROST.

## OPINION

JOHN S. ANDERSON, Justice.

Appellant, Leon Lopez, appeals his conviction for injury to a child. *See* Tex. Pen.Code Ann. § 22.04 (Vernon Supp. 2005). A jury sentenced appellant to 30 years' confinement in the Texas Department of Criminal Justice, Institutional Division. Appellant presents five issues for appellate review. We affirm.

### Factual Background

Complainant, Zharia Lopez ("Zharia"), a four-week old infant, died on September 15, 2003 from a skull fracture and brain hemorrhage. Zharia was born on August 13, 2003 to her mother, Jessica Gabrielides, and her father, appellant Leon Lopez. Gabrielides and appellant met in the summer of 2000 before their last year in high school. Almost immediately after graduation, appellant joined the Navy. He and Gabrielides kept in touch while he was gone and continued their relationship after he returned. They dated on and off, and even lived together for a short time, at which point Gabrielides became pregnant with Zharia. They continued to have an "on again, off again" relationship while Gabrielides was pregnant. Gabrielides had been living with her sister until one month before Zharia was born, when she and appellant moved into an apartment together.

After Zharia was born, appellant remained virtually unemployed while Gabrielides took maternity leave. Gabrielides planned to return to work after four weeks of leave, rather than six, because they needed the income. She planned to return to work on the morning of Zharia's death. Throughout the one month of Zharia's life, only Gabrielides got up with Zharia for her nightly feedings. Appellant never got up to feed or change Zharia during the night.

On the morning of September 15, Gabrielides testified she got up to feed Zharia at 1:30 A.M., and Zharia quickly went back to sleep. At approximately 4:30 A.M., Gabrielides woke up again to feed and change Zharia. She went into the living room and changed her. Then, appellant came out to the living room with his blanket and pillow, and he offered to feed Zharia since Gabrielides had to get up in the morning for her first day back to work. Gabrielides testified she watched appellant make a bottle for Zharia and begin to feed her. Gabrielides then went back to bed. Appellant testified he fed Zharia, put her to sleep in her swing, and went to sleep on the couch/futon in the living room. Gabrielides testified appellant woke her up at approximately 6:00 A.M. because something was wrong with Zharia. When Gabrielides saw Zharia, she was in her swing, slumped over, and not breathing. Gabrielides testified Zharia looked blue and had two broken blood vessels around her nose. Appellant turned on the lights, and Gabrielides told him to call 9–1–1. They attempted CPR, and a neighbor came to assist with CPR, as well, until medical personnel arrived.

Medical personnel quickly transported Zharia to an ambulance and continued to perform CPR on her for approximately one and a half hours. The emergency room physician at Houston Northwest Medical Center declared Zharia dead upon arrival at 7:25 A.M.

Pursuant to department policy, Sergeant Wayne Wendell of the Houston Police Department began to investigate Zharia's death as a potential homicide. When Sergeant Wendell arrived at the hospital, he saw multiple bruises on Zharia's head and neck. He had an informal discussion with Gabrielides and appellant to inquire about the bruises. He then took formal state-

ments from them at the police station. Both of their statements were consistent about the last time Gabrielides got up to feed and change Zharia, that Gabrielides went back to bed, that appellant stayed up to feed Zharia, and that appellant woke up Gabrielides at approximately 6:00 A.M. because Zharia was non-responsive.

The medical examiner, Dr. Roger Milton, testified about the exam he performed on Zharia the next day, September 16. Milton testified there were twenty-nine injuries to Zharia's head and scalp, and the cause of death was a brain hemorrhage and skull fracture. He found a three and one half inch fracture to Zharia's skull, which on an infant of her age amounts to almost the entire length of one side of the skull. He testified there was no evidence of oxygen deprivation, so Zharia's death occurred quickly after the injuries were inflicted. Milton gave detailed testimony about rigor mortis [1] and lividity [2] in order to approximate the time of death. He testified significant signs of lividity and rigor mortis should be seen by four hours after death, and because none of those were present when Zharia was brought into the emergency room, Zharia could not have died as early as 1:30 to 2:00 A.M. He could not, however, pinpoint an exact time of death because of many varying factors.

After learning of Zharia's cause of death and assessing the statements given by both appellant and Gabrielides, in which both stated appellant was the last person to see Zharia alive, Sergeant Wendell arrested appellant. Appellant was charged with capital murder, but the jury convicted appellant of the lesser included offense of injury to a child.

## DISCUSSION

Appellant presents five issues on appeal: (1) the trial court erred in admitting prior unadjudicated bad acts into evidence; (2) the trial court erred in admitting hearsay testimony, denying appellant his right to confrontation; (3) the trial court erred in limiting the cross-examination of State's witness Sergeant Wendell; (4) the trial court erred in allowing the State to force appellant to rule on the veracity of other witnesses; and (5) appellant was denied effective assistance of trial counsel.

### I. Prior Unadjudicated Bad Acts

■ In appellant's first issue, he contends the trial court erred in admitting his prior unadjudicated bad acts into evidence. Specifically, appellant argues the State, through Gabrielides' testimony, sought to show his bad acts and bad character. Appellant challenges the following testimony: (1) while engaged to Gabrielides, appellant dated other people; (2) appellant only served a year and a half of his four-year Navy enlistment; (3) when Gabrielides told appellant he was the father of her unborn child, appellant asked if the child was in fact his; (4) appellant cried while at Navy Boot Camp; (5) appellant told Gabrielides the baby was not his, and she could get an abortion or give the baby up for adoption; (6) appellant argued with Gabrielides about breast feeding the baby and kicked and broke a glass table in their home during that argument; (7) appellant made demands for sex with Gabrielides before she was pregnant; (8) appellant made demands for sex with Gabrielides during her pregnancy; and (9) appellant made demands for sex with Gabrielides three weeks after she gave birth, even though Gabrielides' doctor advised her not

1. Rigor mortis is the stiffening of the joints of the body after death.

2. Lividity or livor mortis is the postmortem pooling of the blood in the body due to gravity when the heart no longer pumps blood.

to engage in sex in the weeks immediately following the baby's birth. Appellant argues this evidence is irrelevant, its probative value is outweighed by its prejudicial effect, and it is inadmissible character evidence.

First, appellant waived consideration of his first three evidentiary complaints because he failed to object in any manner. *See* Tex.R.App. P. 33.1(a); Tex.R. Evid. 103(a)(1). We do not consider those complaints.

■ Second, the state contends appellant waived review of any complaint under Texas Rule of Evidence 404(b) because appellant failed to object at trial on those grounds. The Court of Criminal Appeals allows review under 404(b) even though an appellant does not precisely recite rule 404(b) when making the objection to the trial court. *Montgomery v. State,* 810 S.W.2d 372, 387 (Tex.Crim.App.1991) (op. on reh'g). A relevancy objection "ought ordinarily ... be sufficient under the circumstances to apprise the trial court of the nature of the complaint." *Id.* However, if the circumstances do not apprise the trial court of the nature of the complaint, a relevancy objection alone is not sufficient to preserve error under rule 404(b). *See Medina v. State,* 7 S.W.3d 633, 643 (Tex. Crim.App.1999). An objection stating one legal theory may not be used to support another legal theory on appeal. *Camacho v. State,* 864 S.W.2d 524, 533 (Tex.Crim. App.1993). Here, appellant made only relevancy objections concerning complaints four and five; therefore, we consider only whether those complaints are relevant, and we do not consider whether the trial court's admission of them violated rule 404(b). For the remaining complaints, appellant clearly made a relevancy objection, and during the bench conference, both parties and the trial court discussed these events in terms of extraneous offenses by

specifically identifying them as such during their discussion. Therefore, for the final four complaints, it was apparent from the context of the surrounding record that appellant raised relevancy and 404(b) objections, and we review those complaints accordingly.

■ Finally, appellant contends the complained of evidence violates Texas Rule of Evidence 403 and is unfairly prejudicial. A rule 403 objection is not implicitly contained in relevancy or 404(b) objections; rather, a specific rule 403 objection must be raised to preserve error. *Montgomery,* 810 S.W.2d at 388. Appellant only raised a rule 403 objection concerning complaint six, which concerns the statements about Gabrielides' breast feeding of Zharia that led to appellant kicking and breaking a table. Thus, appellant only preserved error under rule 403 for that complaint.

## A. Relevancy

Relevant evidence is any evidence having any tendency to make the existence of any fact of consequence more or less probable than it would be without the evidence. Tex.R. Evid. 401. All relevant evidence is admissible, and evidence that is not relevant is inadmissible. Tex.R. Evid. 402. We review the trial court's decision to admit evidence under an abuse of discretion standard. *Montgomery,* 810 S.W.2d at 391.

■ The State contends the evidence at issue here is relevant because it tends to show appellant's motive for killing his daughter. We agree. Evidence showing motive to commit murder is a significant circumstance indicating guilt, and it is therefore relevant and admissible. *See Guevara v. State,* 152 S.W.3d 45, 50 (Tex. Crim.App.2004). Throughout its case against appellant, the State sought to show appellant had disdain for Zharia and he saw her as interfering with his relationship

with Gabrielides. Testimony about whether appellant cried when he saw Gabrielides while he was at Navy Boot Camp tends to show what his relationship with Gabrielides was like before she became pregnant. Testimony about appellant's sexual relationship with Gabrielides before, during, and after her pregnancy tends to show how appellant's physical relationship with Gabrielides deteriorated after she became pregnant and gave birth to Zharia. Testimony about appellant's indifference about whether Gabrielides kept the baby or not and an argument about Gabrielides breast feeding Zharia tends to show appellant's apathy or malice towards Zharia, as well as his inability to manage anger. All of this evidence supports the State's theory about appellant's motive. Therefore, appellant's complaints about relevancy are overruled.

### B. Other Crimes, Wrongs, or Acts

Although relevant, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Tex.R. Evid. 404(b). Evidence of other crimes, wrongs, or acts may be admissible if it has relevance apart from the tendency to prove conduct in conformity with character, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* Once an appropriate objection has been lodged, the proponent of the evidence must satisfy the trial court that the evidence has relevance apart from proving character conformity. *Montgomery*, 810 S.W.2d at 387.

We only consider whether the testimony about appellant's sexual encounters with Gabrielides and appellant's argument with Gabrielides that led to the breaking of a glass table are excluded under rule 404(b) because that is the only complained of evidence for which appellant preserved er-

ror. Appellant contends the bad character evidence in this case turned the trial's focus away from who killed Zharia and towards "who's the bum?" We disagree with appellant's characterization of this evidence. As discussed previously, evidence of other crimes, wrongs, or acts of the defendant are admissible if such evidence is relevant to show motive. *See* Tex.R. Evid. 404(b). Having previously held all evidence complained of by appellant tends to show appellant's motive for killing Zharia, we hold the specific evidence of the sexual relationship between appellant and Gabrielides and of the argument leading to appellant's breaking a glass table is admissible under 404(b).

### C. Rule 403

Appellant also argues the complained of evidence should have been barred by rule 403. We only address whether evidence of the argument appellant had with Gabrielides about breast feeding Zharia that led to appellant kicking and breaking a glass table was barred by rule 403 because this is the only complained of evidence about which appellant raised a rule 403 objection in the trial court. Appellant contends this evidence enhanced the State's ability to make the jury believe that if appellant would break a coffee table when angry, he would be more likely to beat a child to death. When a rule 403 objection is raised, the trial court weighs the probative value of the evidence against its potential for unfair prejudice. *Montgomery*, 810 S.W.2d at 389. This means trial court should favor admission in close cases. *Id.* Absent an abuse of discretion, we will not disturb the trial court's decision. *Id.* at 390. When reviewing whether a trial court abused its discretion in conducting a rule 403 balancing test, we consider the *Montgomery–Mozon* factors. *Manning v. State*, 114 S.W.3d 922, 926 (Tex.Crim.App.2003).

In considering the first factor, the court asks how compelling the extraneous offense or bad acts evidence serves to make a fact of consequence more or less probable. *Id.* In this circumstantial case, no forensic evidence was presented to the jury which directly linked appellant to Zharia's death. Evidence which shows appellant's motive as to why he may have forcefully struck Zharia in the head was important to the State's case. After the trial court overruled appellant's objection, appellant testified he broke the coffee table because he was frustrated about their argument over breast feeding Zharia and did not want to take his frustration out on Gabrielides. In addition, medical experts testified that the blow to Zharia's head was caused by extreme force equivalent to dropping her from a two story building, a car crash, or even slamming her head against an immobile object. Considering the violent nature of this crime, evidence that the argument leading to the breaking of the table was about feeding Zharia, and the argument took place only four days before Zharia's death, this evidence was critical for the State's case against appellant.

The second factor is the potential the other offense or bad acts evidence has to impress the jury in some irrational but indelible way. *Id.* The concern here is the danger of unfair prejudice that "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Id.* at 928. The act at issue was appellant's conduct during an argument with Gabrielides—kicking and breaking a glass table. While this evidence, like most evidence introduced by the State, was obviously prejudicial to appellant because Gabrielides testified she was scared and ran from the apartment with her newborn baby, this evidence was not unfairly prejudicial to

such an extent that the jury would be influenced in some indelible way to convict appellant simply because of this event.

The third factor is the time the proponent requires to develop the evidence, during which the jury will be distracted from consideration of the indicted offense. *Id.* at 926. The guilt phase of this trial lasted five days. All testimony from Gabrielides, Gabrielides' father, and appellant about this argument took approximately eight pages of the guilt/innocence record, which consisted of over 1,000 pages. This complained of testimony consumed only a small fraction of time as compared to the entire body of evidence.

The fourth factor is the force of the proponent's need for this evidence to prove a fact of consequence, i.e., whether the proponent has other probative evidence available to help establish a fact, and whether this fact relates to an issue in dispute. *Id.* The State sought to show appellant, who could become easily enraged and who was motivated by his disdain for his infant child, killed the baby. The State presented no other evidence of appellant's temperament for the time period immediately preceding the baby's death, or other evidence suggesting why appellant may have committed this crime.

We find the four *Montgomery–Mozon* factors all weigh in favor of admissibility. Thus, the trial court did not abuse its discretion in admitting the State's evidence about the argument between appellant and Gabrielides.

For these reasons, we overrule appellant's first issue.

## II. *Hearsay*

In appellant's second issue, he contends the trial court erred in admitting hearsay offered to prove Zharia's cause of death, which denied appellant his right to con-

front the declarant. Appellant contends admission of this evidence violated *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). During the State's direct examination of Gabrielides, the prosecutor elicited testimony from her about how she first learned the police suspected appellant of killing Zharia. Gabrielides testified her parents needed to tell her something important on the day after Zharia's death. Defense counsel objected to hearsay. At the bench, the prosecutor argued he was seeking to show Gabrielides' reaction to learning that the police suspected her child was murdered and not to prove the truth of the matter. The prosecutor's argument was, "Being offered to prove up how the person died. Died of a homicide. To show that it occurred and her reaction to it." The trial court overruled appellant's objection. The prosecutor may have intended the testimony to only show Gabrielides' reaction to what she learned, but the testimony she gave was actually double hearsay.

> STATE: What happened when your parents had you sit down and told you to sit down?
>
> GABRIELIDES: They told me to sit down and my dad looked at me and I said I don't have to tell you this [sic] and I had already started screaming no and *he said they think [appellant] killed your baby.*
>
> STATE: Okay. And what happened?
>
> GABRIELIDES: I was screaming and crying and fell to the floor and I was screaming that No, it's not true. He couldn't do this. How could anybody do that to a beautiful little girl. I just—I don't even remember the rest of the night. I was just crying the whole night.

(emphasis added).

The admission or exclusion of hearsay is a matter within the discretion of the trial court. *See Salazar v. State,* 38 S.W.3d 141, 153–54 (Tex.Crim.App.2001). We will reverse the trial court's determination only when the decision lies outside the zone of reasonable disagreement. *Id.* Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex.R. Evid. 801(d). Hearsay is not admissible. Tex.R. Evid. 802. A "matter asserted" includes any matter explicitly asserted, and any matter implied by a statement, if the probative value of the statement as offered flows from declarant's belief as to the matter. Tex.R. Evid. 801(c). When information is offered for a reason other than to prove the truth of the matter asserted, the evidence is not inadmissible. *Martinez v. State,* 22 S.W.3d 504, 508 (Tex.Crim.App.2000). In a double hearsay situation, the evidence is admissible only if each part of the combined statement is covered by an exception to the hearsay rule. *See* Tex.R. Evid. 805.

The first part of the hearsay statement was the statement to Gabrielides by her parents ("he said...."). The second part of the hearsay statement was the statement to Gabrielides' parents by a police officer that the police suspected appellant of killing Zharia ("... they think [appellant] killed your baby"). The record shows the entire context of Gabrielides' conversation with her parents. Gabrielides' mother, Hendrienne Switz, testified she learned the results of the autopsy from Sergeant Wendell, the investigating officer. After Gabrielides returned to Michelle Machin's home with appellant, Gabrielides' parents asked her to tell appellant to leave so Gabrielides could talk with some visitors about grieving. After the visitors left, Switz testified she and Gabrielides' father sat down with Gabrielides, and Switz told Gabrielides the results of

the autopsy. Gabrielides' father also testified Switz told Gabrielides the results of the autopsy. Neither of Gabrielides' parents testified about the contents of the autopsy report or who police believed harmed Zharia. They both testified about Gabrielides' reaction to the information. Based on the context and content of the statement, neither part of the statement qualifies as an exception to hearsay. We hold this complained of testimony was double hearsay, and therefore, the trial court abused its discretion in admitting this testimony into evidence.

■ Appellant complains this error also violated his right to confront witnesses against him. Appellant's counsel argued to the trial court that the statement was hearsay, prejudicial, and double hearsay. He also argued experts should give the complained of testimony, not Gabrielides. He now contends it was apparent to the trial court through the context of the objection, argument, and testimony that his objection included the denial of confrontation. We disagree. The context only supports a hearsay objection, and a hearsay objection will not preserve error on confrontation grounds. *Paredes v. State*, 129 S.W.3d 530, 535 (Tex.Crim.App. 2004).

■ The admission of inadmissible hearsay constitutes non-constitutional error.[3] *Yanez v. State*, 199 S.W.3d 293, 308 (Tex.App.-Corpus Christi 2006, no pet.). Such error is harmless if the appellate court, after examining the record as a whole, is reasonably assured that the error did not influence the jury verdict or had but slight effect. Tex.R.App. P. 44.2(b); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998). Gabrielides' statement ultimately provided testimony that the police believed appellant killed Zharia. Appellant argues that because Gabrielides testified that "they" made the statement we cannot discern who made the original statement, and therefore, the State was allowed to proffer more evidence before the jury that other authorities believed appellant committed the crime. Based on the fact that appellant was indicted for the crime, and that the police themselves testified during trial that they believed appellant committed the crime and why,[4] we are reasonably assured the error did not influence the jury's verdict. We overrule appellant's second issue.

### III. Cross–Examination of Sergeant Wendell

■ In appellant's third issue, he contends the trial court erred in limiting his cross-examination of State's witness Sergeant Wendell concerning scratches on Zharia's face and, thus, violated his Sixth Amendment right to confrontation. Appellant sought to show Sergeant Wendell made up his mind about who the suspect was early in the investigation when appellant did not display a significant amount of grief over his daughter's death, and having thought so, Sergeant Wendell did not thoroughly investigate the crime. Appellant argues the jurors did not have the full

---

**3.** Appellant contends the error here is constitutional because he was denied the right to confront witnesses against him. We disagree because appellant did not preserve error on confrontation grounds.

**4.** Appellant contends Gabrielides' testimony also violates *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). We disagree. Gabrielides' use of the word "they" is not as deceptive as appellant argues. Hendrienne Switz testified she learned the results of the autopsy from Sergeant Wendell, the investigating officer, and Sergeant Wendell testified at trial. Moreover, Dr. Roger Milton, the medical examiner, testified about the results of the autopsy and Zharia's cause of death.

benefit of the defensive theory before them during their deliberations because he was not able to fully develop this testimony.

We review the trial court's decision to limit a defendant's cross-examination for abuse of discretion. *See Love v. State,* 861 S.W.2d 899, 903 (Tex.Crim.App. 1993); *Stults v. State,* 23 S.W.3d 198, 204 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). Although our legal system highly regards the right to cross-examine witnesses, a party must preserve error for appellate review. *See Wright v. State,* 28 S.W.3d 526, 536 (Tex.Crim.App.2000). A party must object and obtain a ruling from the trial court, or object to the trial court's refusal to rule. Tex.R.App. P. 33.1. A party must also make an offer of proof to establish the substance of the excluded evidence. *Castillo v. State,* 939 S.W.2d 754, 758 (Tex.App.-Houston [14th Dist.] 1997, pet. ref'd).

During Sergeant Wendell's cross-examination, the record shows defense counsel was questioning Sergeant Wendell about his investigation and asked a line of questions pertaining to a scratch on Zharia's cheek. The trial court sustained a relevancy objection by the prosecutor to two questions asked by defense counsel. Appellant did not contest the ruling, or make any attempt to persuade the trial court to rule in his favor. Because appellant failed to object at all, let alone on confrontation grounds, he has waived appellate review of this issue.

## IV. Commenting on Veracity of Other Witnesses

In appellant's fourth issue, he contends the trial court erred in allowing the State to force appellant to "rule" on the veracity of other witnesses. Appellant identifies one particular line of testimony during the State's cross-examination of him when the State asked him whether witness Michelle Machin lied during her testimony. During her testimony, Machin testified about an incident after Gabrielides gave birth to Zharia when Gabrielides was feeling ill and Machin and Gabrielides' mother, Hendrienne Switz, came to help Gabrielides. Machin testified appellant ignored Machin when Machin tried to tell appellant how to prepare food for Gabrielides, appellant turned up the volume on the television while Machin and Switz were at the apartment, and appellant left the apartment by slamming the door. Appellant testified he did not hear or remember Machin talk to him, he did not turn up the volume on the television, and he did not remember leaving the apartment. On four occasions during this line of questioning, the prosecutor asked appellant whether Machin was lying because he apparently disagreed with her version of the events. Appellant complains the trial court erred in allowing the prosecutor to ask appellant to "rule" on Machin's veracity.

The State argues appellant waived review of this issue because the complaint appellant raises on appeal does not comport with his objection at trial. *See* Tex.R. Evid. 103(a)(1); Tex.R.App. P. 33.1(a). The State represents appellant only objected to a violation of Texas Rule of Evidence 614, the "Rule," whereby all witnesses, with specific exceptions, are excluded from court during the testimony of other witnesses. *See* Tex.R. Evid. 614. However, the record shows defense counsel made several attempts to prevent appellant from answering these questions by objecting on different grounds each time the question was asked during this line of questioning. Defense counsel objected to speculation, mischaracterization of Machin's testimony, and violation of the Rule, and the trial court overruled each of appellant's objections. If appellant had only objected to a

violation of the Rule, the State would be correct, and appellant's complaint at trial would not comport with the issue raised on appeal.

 Even though appellant preserved the error for review, his argument is not persuasive. The trial court erred by overruling appellant's objection to the prosecutor's veracity questions because an attorney may not impeach one witness's testimony with the testimony of other witnesses. *Ex parte McFarland*, 163 S.W.3d 743, 755 n. 37 (Tex.Crim.App.2005). When considering the entire record, however, appellant has not been harmed. Tex.R.App. P. 44.2(b); *see also McKinney v. State*, 491 S.W.2d 404, 408 (Tex.Crim. App.1973) (holding, in light of the entire record, defendant was not harmed when prosecutor asked defendant on cross-examination whether other witnesses were lying); *Mason v. State*, 449 S.W.2d 47, 49 (Tex.Crim.App.1969). Throughout the trial, the State presented evidence showing appellant, rather than Gabrielides, committed this offense, appellant's motive and ability to cause Zharia's death, Gabrielides' lack of any motive, their relationship during the time leading up to the night of Zharia's death, and statements and observations by appellant and Gabrielides to others following Zharia's death. Based on ample evidence presented by the State, appellant was not harmed when asked if another witness lied.[5] We overrule appellant's fourth issue.

## V. Ineffective Assistance of Counsel

In appellant's fifth issue, he contends he was denied effective assistance of counsel when his trial counsel allowed him to be tried as a bad person, generally. Specifically, appellant complains that if this court finds that not every complaint raised under issue one was properly preserved by objection, then appellant complains his trial counsel was ineffective by failing to render a contemporaneous objection each time such evidence was introduced.

The standard of review for an appellate issue claiming ineffective assistance of counsel is well settled. We apply the two-prong test from *Strickland v. Washington*, 466 U.S. 668, 687–92, 104 S.Ct. 2052, 2064–67, 80 L.Ed.2d 674 (1984), as recited in *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex.Crim.App.1986). *See Green v. State*, 191 S.W.3d 888, 895 (Tex.App.-Houston [14th Dist.] 2006, pet. filed).

 Appellant does not meet the first prong of *Strickland* because the record is undeveloped. Any allegation of ineffectiveness must be firmly founded in the record. *Bone v. State*, 77 S.W.3d 828, 833 (Tex.Crim.App.2002). When the record is silent about the motivations of counsel, we cannot conclude counsel's performance was deficient. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994). In such circumstances, appellant fails to rebut the presumption trial counsel's decisions were reasonable. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex.Crim.App.1999). An appellate court is not required to speculate on trial counsel's actions when confronted with a silent record. *Jackson*, 877 S.W.2d at 771; *McCoy v. State*, 996 S.W.2d 896, 900 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd). However, if a silent record clearly indicates no reasonable attorney could have made such trial decisions, to hold such counsel ineffective is not specu-

---

5. Appellant was also asked on at least five other occasions whether other witnesses lied during their testimony. Each time, the particular facts about which the prosecutor was asking were different. At no time after the first line of questioning directed at Machin's testimony did defense counsel object to the prosecutor's questions. Therefore, appellant did not preserve error as to those other questions.

lation. *See Vasquez v. State,* 830 S.W.2d 948, 950–51 (Tex.Crim.App.1992).

The record contains no explanation as to why defense counsel objected to some but not all of the State's proffered evidence during Gabrielides' testimony. Appellate counsel filed a motion for new trial but did not raise ineffective assistance of counsel as a ground in the motion. Trial counsel's failure to object does not rise to a level such that no reasonable attorney could have made such trial decisions. Therefore, we overrule appellant's fifth issue.

### CONCLUSION

Having considered and overruled each of appellant's five issues on appeal, we affirm the judgment of the trial court.