NUMBER 13-04-00305-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


LUPITO MONTAÑEZ, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 398th District Court of Hidalgo County, Texas.

 

MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Vela and Wittig (1)

Memorandum Opinion by Justice Wittig


 Lupito Montanez appeals his conviction on one count of capital murder and one
count of attempted capital murder. The charges stem from a drive-by shooting in which
a three year old was killed and two adults injured. Appellant pled not guilty and took the
stand in his own defense. A jury found appellant guilty of both counts and he received an
automatic life sentence on the capital murder charge. The jury assessed his punishment
on the second charge at life in prison and a $10,000 fine. We affirm.

 Appellant raises forty-one issues, argued in groups. We address his issues in like
fashion. 

 1. Post Arrest Silence

 In his first issue, appellant complains his trial counsel was ineffective. During the
State's examination of Officer Guerrero, Guerrero testified that he explained to appellant
that he was going to ask some questions. Guerrero then testified that appellant declined
to answer. Appellant argues under the Sanchez case, that because defense counsel failed
to object to the testimony about appellant's refusal to answer, his performance was
professionally deficient. See Sanchez v. State, 707 S.W.2d 575, 582 (Tex. Crim. App.
1986) (defendant may not be impeached through the use of post-arrest, pre-Miranda
silence because such impeachment violates the defendant's right to be free from
compelled self-incrimination, and also because such impeachment is improper from an
evidentiary standpoint). When defense counsel did not object, this possible complaint was
not preserved for review and thus deprived appellant of a constitutional error challenge. 

 To show that trial counsel was ineffective, appellant must demonstrate that: 1) trial
counsel's performance was deficient because it fell below an objective standard of
reasonableness; and 2) a probability existed, sufficient to undermine confidence in the
outcome, that, but for counsel's unprofessional errors, the result of the proceeding would
have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984); Thompson v.
State, 9 S.W.3d 808, 812 (Tex. Crim. App.1999). Strickland states that judicial scrutiny
of counsel's performance must be highly deferential and that a reviewing court "[m]ust
indulge a strong presumption that counsel's conduct falls within the wide range of
reasonable professional assistance . . . ." Strickland 466 U.S. at 689. A reviewing court
will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective
assistance claim. Thompson v. State, 9 S.W.3d at 813-14. This case typifies an
ineffective counsel challenge because "[i]n the majority of cases, the record on direct
appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's
actions." Mallet v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). 

 The record is silent as to why appellant's trial counsel did not object to the testimony
concerning appellant's post-arrest silence. It may well have been counsel's strategy to
focus on appellant's own testimony and alibi to come, rather than object and call further
attention to the results of this horrific crime or emphasize appellant's early silence. Trial
counsel should ordinarily be afforded an opportunity to explain his actions before being
found ineffective. Rylander v. State, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). This
would particularly be true because defense counsel repeated a similar inquiry to Guerrero
minutes later while attempting to point the finger at Joe Hernandez. Based upon this
record, we cannot conclude that appellant has established that trial counsel's performance
fell below an objective standard of reasonableness under the first prong of Strickland. 
Accordingly, appellant's first issue is overruled.

 2. Legal and Factual Sufficiency

 In appellant's second and third issues, he attacks the legal and factual sufficiency
of the evidence to support his conviction on counts 1 and 2. Because the transferred
intent doctrine was omitted from the trial court's application paragraph, appellant argues
there is no evidence to support the jury's guilty verdicts. He cites McCormick v. United
States, 500 U.S. 257, 269 (1991). There, the United States Supreme Court observed that
the court of appeals affirmed the conviction on legal and factual grounds that were never
submitted to the jury. Although McCormick challenged the adequacy of the jury instructions
to distinguish between campaign contributions and payments that are illegal under the
Hobbs Act, the court of appeal's opinion did not examine or mention the instructions given
by the trial court. The court goes on to observe that matters of intent are for the jury to
consider. Id. at 270. 

 As the State argues, appellant seems to be attacking the court's charge because
transferred intent is not in the application paragraph. Unlike McCormick, here there was
no objection to this oversight. Further, unlike McCormick, the jury was instructed about the
transferred intent doctrine in the abstract portion of the charge. (2) The charge error, if any,
must be ignored unless it caused egregious harm. Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1985). Furthermore, appellant's argument was specifically rejected in
Manrique v. State, 994 S.W.2d 640, 642 (Tex. Crim. App. 1999).

 Appellant next cites Dunn v. United States, 442 U.S. 100, 105-106 (U.S. 1979). 
There the court observed: 

 In our view, it is unnecessary to inquire, as did the Court of Appeals, whether
petitioner was prejudiced by a variance between what was alleged in the
indictment and what was proved at trial. For we discern no such variance.
The indictment charged inconsistency between petitioner's statements in the
September 30 interview and his grand jury testimony. That was also the
theory on which the case was tried and submitted to the jury. Indeed, the
October 21 testimony was introduced by the Government only in rebuttal to
dispel any inference that petitioner's grand jury testimony was true. See Tr.
82-83. But while there was no variance between the indictment and proof at
trial, there was a discrepancy between the basis on which the jury rendered
its verdict and that on which the Court of Appeals sustained petitioner's
conviction. Whereas the jury was instructed to rest its decision on Dunn's
September statement, the Tenth Circuit predicated its affirmance on
petitioner's October testimony. The Government concedes that this ruling
was erroneous. Brief for United States 15, 35; Tr. of Oral Arg. 25. We
agree.

 

Id. at 105-106. Dunn is clearly distinguishable because it addresses a fatal variance
between the indictment and the proof. Finally, appellant references Cole v. Arkansas, 333
U.S. 196, 201 (1948) (holding that under any reasonable construction Section 1 creates
separate offenses, as does Section 2, and an indictment that alleges crimes covered by
a part of Section 1 does not impose upon the defendant a duty to defend under Section
2 or against "threat" provisions of Section 1). Cole is likewise distinguishable because the
charge in that case was under one section of the charge and the proof under another
section.

 Finally, appellant's counsel argues we are bound to follow Thompson v. Louisville,
362 U.S. 199, 206 (1960). This is simply a no-evidence case involving a loitering statute. 
See id.

 In reviewing legal sufficiency, we look at all of the evidence in the light most
favorable to the prosecution to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Vasquez v. State,
67 S.W.3d 229, 236 (Tex. Crim. App. 2002). Legally sufficient evidence supporting a
conviction exists if the court, after reviewing the evidence in the light most favorable to the
prosecution, determines that a rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19
(1979).

 Evidence may be factually insufficient if: (1) it is so weak as to be clearly wrong and
manifestly unjust, or (2) the adverse finding is against the great weight and preponderance
of the available evidence. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007) 
(citing Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). The evidence, though
legally sufficient, is factually insufficient if it is so weak that the jury's verdict seems clearly
wrong and manifestly unjust, or whether, considering conflicting evidence, the jury's verdict,
though legally sufficient, is nevertheless against the great weight and preponderance of the
evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). Such a
factual sufficiency review requires the reviewing court to consider all of the evidence. 
Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). A clearly wrong and
unjust verdict occurs where the jury's finding is manifestly unjust, shocks the conscience,
or clearly demonstrates bias. Sells v. State, 121 S.W.3d 748, 754 (Tex. Crim. App. 2003).

The Texas Court of Criminal Appeals in Roberts explained that a reversal for factual
insufficiency cannot occur when "the greater weight and preponderance of the evidence
actually favors conviction." Id. at 524.

 Viewing the evidence in the light most favorable to the prosecution, we determine
that a rational trier of fact could have found the essential elements of the offense beyond
a reasonable doubt. As a predicate to charging capital murder, the Texas Penal Code
requires that a defendant commit murder as defined under the penal code. See Tex.
Penal Code Ann. § 19.02(b)(1) (Vernon 1994); Graham v. State, 19 S.W.3d 851, 853 (Tex.
Crim. App. 2000). Murder is aggravated to capital murder where any one of eight
additional circumstances are present. See Tex. Penal Code Ann. § 19.03(a)(1)-(8)(Vernon
1994); Saenz v. State, 166 S.W.3d 270, 272 (Tex. Crim. App. 2005). In this case, the
victim, Molly, was three years old. See Tex. Penal Code Ann. § 19.03(a)(8). We review
the evidence to determine if the proof demonstrates appellant (1) intentionally or knowingly
caused the death of an individual under six years old in count one and in count two
intended to cause serious bodily injury and commits an act clearly dangerous to human life
that causes the death of an individual. Tex. Penal Code Ann. § 19.02(b)(2)(Vernon 1994). 

 An eye-witness placed appellant in the rear of the white Taurus, driving slowly
through a trailer park. He fired three shots from a 12 gauge police shotgun killing Molly
and injuring two others, including Gonzalez. Gonzalez had dated appellant's estranged
wife and appellant had seen a picture of Gonzalez with his wife. Appellant told his wife he
was going to shoot her boyfriend, although she recanted this statement on the witness
stand. She also recanted her statement that appellant was hiding under the house when
police came. A used shot gun shell was recovered from the back of the white Taurus. 
That shell was fired from the recovered shotgun. There was gunpowder residue on a
flowered sheet taken from the back seat of the Taurus. Appellant brought a black shotgun
to a party. He left the party in the white Taurus the night of the shootings and was then
placed at the scene of the drive-by shooting in the rear of the same vehicle firing the
shotgun. 

 Transferred intent occurs when a defendant, with the required culpable mental state,
intends to injure or harm a specific person but injures or harms a different person or both.
Tex. Pen. Code Ann. § 6.04(b)(2). Under the theory of transferred intent, the jury could
reasonably infer that appellant intended to shoot and kill Gonzalez but instead killed the
three year old girl, injured another, and wounded Gonzalez who was standing nearby.
Furthermore the jury, being the sole judge of the credibility of the witnesses, was free to
accept or reject the evidence before it, and in doing so, concluded that appellant was the
shooter. See Earls v. State, 707 S.W.2d 82, 85 (Tex. Crim. App.1986). Accordingly, we
hold the evidence is legally sufficient.

 In determining factual sufficiency, we review the evidence in a neutral light rather
than in the light most favorable to the verdict. See Johnson, 23 S.W.3d at 7. Appellant
testified in his own behalf. He denied any part in the shooting and testified he spent the
entire evening with two others, including Angie Figueroa. He denied having a shotgun,
denied being in the white Taurus, and stated he lent his blue Honda to Joe and Jerry
Hernandez. He further testified he saw Joe Hernandez leave the party in a white Taurus. 
Angie Figueroa corroborated appellant's testimony that he had spent the evening with her. 
Salinas, another trailer park resident, said he saw a white Taurus about 8:00 or 9:00 being
driven by Robert. He could not see who was in the back seat. He had heard that appellant
was going to "tumbar" someone at the trailer park. 

 Appellant's common-law wife, Jessica Guajardo, first denied marital separation
from appellant, then admitted she had been separated for about eight months and dated
Gonzalez. She denied ever telling appellant Gonzalez's name but stated that he found out
about him some three weeks before the shootings and punched Guajardo in the face. She
and appellant both denied that appellant saw the picture of her with Gonzales. She denied
saying her husband was going to kill her boyfriend and denied that she was afraid of him. 
The couple reconciled in August of 2003. Her testimony was inconsistent in many
particulars.

 Villalon, a good friend of appellant, testified contrary to much of his statement given
to law enforcement. He stated that appellant was at the party, and Robert, who drives a
white car, was also there. He denied that appellant and Robert were talking together, or
that they left together, contrary to his statement. He also denied saying that appellant was
at his house with a shotgun about 10:30 p.m. on the night of the shootings.

 Roberto Martinez testified he had just joined the Latin Kings gang two months
before the shootings and was a "peewee." Appellant, his senior, was an "Almighty." 
Robert drove his stepfather's white Taurus to the home of the party. He left the party with
appellant, who got in the back seat of the Taurus. They turned into the trailer park and
appellant instructed Robert to drive through again. On their second pass Robert heard
three shots coming from the back seat. He turned around and saw appellant with a 12
gauge shotgun sticking out of the car window. Robert was in juvenile detention when he
testified and was awaiting the results of a certification hearing to be tried as an adult for
murder. 

 Dr. Salinas testified he autopsied Molly. He removed pellets from a massive
shotgun blast that entered her left side and perforated her heart, lungs, liver, spleen and
other organs.

 As fact finder, the jury is the exclusive judge of the credibility of witnesses and the
weight to be afforded their testimony. Rodriguez v. State, 191 S.W.3d 428, 437 (Tex.
App.-Corpus Christi 2006, pet ref'd). The jury is free to accept one version of the facts,
reject another, or reject all or any of a witness's testimony. Id. Disagreeing with the fact
finder's determination is appropriate only when the record clearly indicates that such a step
is necessary to arrest the occurrence of a manifest injustice. Id. Otherwise, due deference
must be accorded the fact finder's determinations, particularly those concerning the weight
and credibility of the evidence. Id. 

 In this case, several of the witnesses were impeached and many of the particulars
were disputed. Appellant and his witnesses testified unequivocally he was innocent and
pointed to some evidence suggesting that Joe Hernandez could have been the shooter. 
However, witnesses for both the State and defense were impeached. We hold that the
proof of guilt is neither so obviously weak as to undermine confidence in the jury's
determination, nor that the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof. Johnson, 23 S.W.3d at 11. The supporting evidence is not
outweighed by the greater weight and preponderance of the contrary evidence. Roberts,
220 S.W.3d at 520. Appellant's issues on legal and factual sufficiency are overruled.

 3. The State's Penalty Objection

 Appellant contends the court erred by sustaining the State's unconstitutional penalty
objection during appellant's closing argument. In essence, appellant contends he was
barred from showing that the State's key eye witness, Robert Martinez, had a motive to lie. 
Appellant does not properly cite to the record. See Tex. R. App. p. 38.1(h). However, he
does quote the offending language in his brief. "Robert is the one with the big benefit. He
told you what they wanted to hear. Good testimony. No certification, no death or life
before a jury like you all." The prosecutor objected "once again to the continuing to bring
in punishment during the guilt/innocence phase, Judge. That's clearly unacceptable." 
Appellant's counsel made no response and the court sustained the objection. Appellant
failed to offer an informal or formal bill of exception.

 Thereafter, appellant's counsel continued: "Judge, I'm talking about Robert
Martinez. May I continue?" The court responded: "You may." Appellant's counsel
continued his attack on Martinez.

 Texas Rule of Appellate Procedure 33.1(a)(1)(A) provides, in relevant part, that for
a complaint to be presented on appeal, a timely request, objection, or motion must have
been made to the trial court, which "states the grounds for the ruling that the complaining
party sought from the trial court with sufficient specificity to make the trial court aware of
the complaint, unless the specific grounds were apparent from the context." Tex. R. App.
P. 33.1(a)(1)(A); see Heidelberg v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004). 
Texas Rule of Evidence 103(a)(1) contains similar guidelines, providing that "a timely
objection or motion to strike [must appear] on the record, stating the specific ground of
objection, if the specific ground was not apparent from the context." Tex. R.
Evid.103(a)(1). Additionally, it is well settled that the legal basis of a complaint raised on
appeal cannot vary from that raised at trial. Euziere v. State, 648 S.W.2d 700, 703-704
(Tex. Crim. App.1983). To preserve error that does not appear on the face of the record,
an appellant is required to make a formal bill of exception within thirty days of filing the
notice of appeal. Tex. R. App. P. 33.2. 

 Appellant cites Davis v. Alaska, 415 U.S. 308, 316-317 (U.S. 1974), which involves
cross-examination, not argument. It holds: "The partiality of a witness is subject to
exploration at trial, and is 'always relevant as discrediting the witness and affecting the
weight of his testimony.'" Id. Exposure of a witness's motivation in testifying is a proper
and important function of the constitutionally protected right of cross-examination. Id. 
Appellant next generically cites Buitureida v. State, 684 S.W.2d 133, 140-41 (Tex.
App.-Corpus Christi 1984, pet. ref'd) (by prohibiting appellants their right to fully
cross-examine a witness as to his criminal record and to develop testimony as to his parole
status, the trial court committed reversible error). While neither case is on point, we do not
disagree that a witness's motivation in testifying is a proper function of final argument. In
any event, appellant spent significant time in both his cross-examination and re-cross
questioning the status of criminal charges against the witnesses. Martinez's juvenile and
certification status was clearly before the jury. 

 Appellant's brief fails to contain appropriate citations to authorities and to the record. 
Tex. R. App. P. 38.1(h). Furthermore, appellant did not timely object at trial, did not state
the specific grounds of his objection, and did not inform the trial court or us by bill of
exception what other arguments he would have made. Therefore, error if any, is waived. 
Tex. R. App. P. 33.1(a)(1)(A); Martinez v. State, 91 S.W.3d 331, 336 (Tex. Crim. App.
2002); see also Tex. R. App. P. 33.2. Because the charges against Martinez where
elsewhere repeated in the record, any error was harmless. Tex. R. App. P. 44.2.

 4. Side Bar Objection

 Appellant's next issue states: "The court reversibly sustained State's 'side bar'
objection to 'they might just send you back to prison' if you're not going to testify the way
the DA wants you to." Appellant's trial counsel had already impeached the State's witness
Jorge Trevino by showing he had pled guilty to tampering with the evidence. The
tampering charge arose out of Trevino's part in moving the shot gun purportedly used in
the crimes. Appellant's counsel established the witness was on probation for ten years. 
In context, counsel asked Trevino if, because he was on probation for ten years, "If you
mess up, you're going to prison?" Trevino responded: "Yes sir." Thereafter came the
objectionable statement of defense counsel: "And you better say what she asks you,
because they might just send you back to prison because you're not going to testify the
right - the way they wanted to?"

 The State objected to the sidebar remarks. The court sustained the objection and
invited further questioning by appellant's counsel. Counsel continued with questions about
the weapon, tampering, the degree of his felony, and other related issues. 

 Side bar remarks are remarks of counsel that are neither questions to the witness
nor comments addressed to the court. Brokenberry v. State, 853 S.W.2d 145, 152 (Tex.
App.-Houston [14th Dist.] 1993, pet. ref'd). We review the trial court's ruling under an
abuse of discretion standard. Martin v. State, 173 S.W.3d 463, 467 (Tex. Crim. App.
2005). In the context of an actual trial, we cannot say defense counsel's statements were
not in the nature of sidebar remarks. We hold the trial court was within its discretion to
sustain the objection. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (trial
courts have broad discretion in their evidentiary rulings and are usually in the best position
to determine whether evidence should be admitted or excluded). Moreover, even had the
ruling been erroneous, there was no harm given the great latitude afforded appellant's trial
counsel in his cross examination. Tex. R. App. P. 44.2. Appellant's fifth issue is overruled.

 5. Issues Six through Thirty Seven

 In his brief, appellant lumps thirty-one issues together. As we decipher his
argument, he complains on an incidence of "reversibly overruled hearsay objection,"
multiple occasions of the admission of hearsay without objection, and in the alternative,
ineffective assistance of counsel for the failure to object. Appellant's counsel uses the 
following abbreviations to the great detriment of an effective brief: SO, GT,WOOGT,
WOONCT, WOOCT, WOO, et cetera. (3) 

 We will first address the two instances in which the defense timely made an
objection. Defense counsel objected to Guerrero's testimony concerning his briefing by
officer Canales and to an "excited utterance" to Guerrero by Joey Reyna. Guerrero
testified that after being read his rights, Reyna declared to Guerrero that he did not do the
crime and would not take the "muleta" (blame) for one of his brothers. The trial judge
initially sustained the objection, but following a hearing without the jury, overruled the
hearsay objection and allowed Reyna's statement. The trial court also instructed counsel:
"But I am ruling as the evidence is proceeding . . . ." (4) Appellant makes numerous other
complaints about Guerrero's testimony including statements by Martinez that he was with
appellant that night, he learned from Martinez's stepfather that Martinez used his
stepfather's vehicle on October 3rd without permission, that Canales told him a white
Taurus was the suspected vehicle, that Hernandez brothers Jerry and Joe "Chronic" were
possible suspects, that appellant implicated himself in the drive-by, named appellant as the
shooter, and described weapons hidden in Villalon's house. Guerrero also testified he
heard co-investigator Canales executed a trace warrant on Guajardo's phone and learned
Gloria's daughter Pena moved out, but returned and made calls. Guerrero also related
additional comments by Hernandez, Villalon, Trevino and others which join the litany of
purported hearsay statements appellant now condemns.

 The State counters that this testimony is not hearsay because it was not introduced
for the truth of the matter asserted, but to explain how the officer came to suspect
appellant, citing, Jones v. State, 843 S.W.2d 487, 499 (Tex.Crim.App. 1992). In Jones,
at the guilt/innocence phase of the trial, the arresting officer testified that after listening to
another detective question Yelena Comalander, he began to suspect appellant of that
offense, and that he then had an arrest warrant issued for appellant. Id. The court held
because the statement was not offered to prove the truth of the matter asserted, but to
show why the officer obtained an arrest warrant for and arrested appellant, it was not
objectionable as hearsay. Id.

 In response to this argument appellant cites Schaffer v. State, 777 S.W.2d 111, 114
(Tex. Crim. App. 1989). Schaffer holds: "In the case before us, the State did indirectly
that which it could not do directly--Officer Segovia's testimony informed the jury that Seals
told him that appellant was not an informant." Id. In Schaffer, the defendant testified he
was an informant and the State sought to disprove his defensive theory by injecting the
inadmissable hearsay. Id. Schaffer is thus distinguishable from our case where appellant,
through direct and indirect questioning, sought to establish a shoddy investigation that
should have followed up and charged "Chronic" Hernandez rather than appellant. In
testimony, Guerrero stated that he initially suspected Hernandez, but that other factors led
the investigation to appellant.

 The admission or exclusion of hearsay is a matter within the discretion of the trial
court. Salazar v. State, 38 S.W.3d 141, 153-54 (Tex. Crim. App.2001). We will reverse
the trial court's determination only when the decision lies outside the zone of reasonable
disagreement. Id. Hearsay is a statement, other than one made by the declarant while
testifying at the trial or hearing, offered in evidence to prove the truth of the matter
asserted. Tex. R. Evid. 801(d). Hearsay is generally not admissible. Tex. R. Evid. 802. 
A "matter asserted" includes any matter explicitly asserted, and any matter implied by a
statement, if the probative value of the statement as offered flows from declarant's belief
as to the matter. Tex. R. Evid. 801(c). When information is offered for a reason other than
to prove the truth of the matter asserted, the evidence is not inadmissible. Martinez v.
State, 22 S.W.3d 504, 508 (Tex. Crim. App. 2000); Lopez v. State, 200 S.W.3d 246, 254
(Tex. App.-Houston [14th Dist.] 2006, pet. ref'd).

 The State also argues that the prior inconsistent statements of Salinas, Martinez
and Trevino could also be used to rebut the defense's contention that these stories were
recent fabrication or the result of improper influence and motive. See Tex R. Evid. 
801(c)(1)(B); Wisdom v. State, 143 S.W.3d 276, 262 (Tex. App.-Waco 2004, no pet.) (rule
801(e)(1)(B) allows for the admission of a witness's prior consistent statement "to rebut an
express or implied charge against the declarant of recent fabrication or improper influence
or motive"). Cf. Head v. State, 4 S.W.3d 258, 262 (Tex. Crim. App. 1999) (trial court could
have reasonably concluded that Peterson's testimony, when taken in context, did not lead
to any inescapable conclusions as to the substance of the out-of-court statements). 

 We agree with appellant that the trial court's first instinct to sustain the objection to
Reyna's excited utterance was probably correct. However, we fail to see how this is not
harmless error, given that it was merely cumulative of other evidence admitted without
objection. Moore v. State, 999 S.W.2d 385, 402 (Tex.Crim.App. 1999) (the admission of
the same evidence from another source, without objection, waives previously stated
objections) (citing Massey v. State, 933 S.W.2d 141, 149 (Tex. Crim. App.1996)). 
Furthermore, as the State argues, appellant was not implicated by Reyna's denial of
involvement. See Johnson v. State 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). In fact,
the testimony could be viewed as possibly implicating "Chronic" Hernandez.

 Officer Canales initially briefed Guerrero when Guerrero began to assist Canales. 
Appellant objected. Guerrero merely testified that Canales told him there was a drive-by
shooting. Generally, testimony by a police officer offered to show how the defendant
became a suspect in an investigation is not hearsay. Jones, 843 S.W.2d at 499; Dinkins
v. State, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995); see also Ortiz v. State, 93 S.W.3d
79, 95 (Tex. Crim. App. 2002). In any event, the error, if any, was also harmless because
this was an undisputed fact admitted multiple times without objection. Moore 999 S.W.2d
at 402. 

 The other complaints by appellant pertaining to the purported hearsay testimony of
Guerrero were not accompanied by an objection to the trial court. Thus error, if any, was
waived. Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(1); Lopez, 200 S.W.3d at 251.

 The second series of issues in this amalgamated point of error concern the
testimony of Officer Canales (nominated "Incidence Series Two" by appellant.) Officer
Canales was a deputy with Hidalgo County Sheriff's Office. Like Guerrero, he was told
many things about the shooting. He even related that he learned that Joe "Chronic"
Hernandez was a suspect. Virtually all of his testimony was not objected to and merely re-plowed the same ground gone over by Guerrero and the eye witnesses. For example,
Martinez implicated himself as the driver, appellant was the shooter, he had a 12 gauge
shotgun, and removed it from Martinez's vehicle after the shooting. 

 Appellant points to one place in the record where there was an objection to the now
complained of hearsay. Canales testified he took a statement from Fernando after the
arrest of appellant. When asked to look at the statement, defense counsel objected that
the witness could not rely on the unadmitted statement. "He can rely upon his own report
not his [the witness's] statement. That's not in evidence, Judge." The objection was
sustained. The State then argued "He wrote it, Judge." The court said: "He took it
himself?" Canales replied "Yes." The court then overruled the objection. Thereafter the
witness said he learned from Fernando that "he was going to take him out." This
information was in his report. While it appears that Canales may have relied on his own
report, which also contained Fernando's statement, he nevertheless was testifying about
Fernando's out of court statement. Assuming error, the error was also harmless because
this assertion was admitted multiple times without objection. Moore 999 S.W.2d at 402. 
Defense counsel did not object to Canales's use of his report that likewise contained the
statement of Fernando. See Tex. R. App. p. 33.1(a).

 Appellant does not point us to any other place in the record where there was an
objection to the now complained of hearsay by Canales. Because there was no objection
to the trial court, error, if any, was waived. Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(1);
Lopez, 200 S.W.3d at 251; Martinez, 91 S.W.3d at 336.

 Appellant contends, in the alternative, that trial defense counsel was ineffective if
any hearsay error was waived. Trial counsel should ordinarily be afforded an opportunity
to explain his actions before being found ineffective. Rylander, 101 S.W.3d at 111. 
Appellant fails to demonstrate trial counsel's performance was deficient because it fell
below an objective standard of reasonableness. Thus he fails to meet the first prong of
Strickland. Strickland 466 U.S. 687, (1984). (5) Issues six through thirty-seven are overruled.

 6. Issues Thirty-Eight through Forty One

 In his last four issues, appellant complains the prosecutor "reversibly cross-examined Montanez" by asking whether he or "a series of prior witnesses" or "a prior
specific witnesses" (sic) lied. These assertions of error are repeated in his issues thirty-eight and thirty-nine respectively. The complaints center around the prosecutor
questioning the defendant about the prior testimony of Villalon, Martinez, Reyna, his wife
and others. Appellant implicitly admits there were no corresponding and material
objections by defense counsel at trial. Regardless of whether it is the State or the
defendant, to complain about a trial court's admission, exclusion, or suppression of
evidence, a party "must, at the earliest opportunity, have done everything necessary to
bring to the judge's attention the evidence rule [or statute] in question and its precise and
proper application to the evidence in question." Lopez, 200 S.W.3d at 251; Martinez 91
S.W.3d at 336; see Tex. R. App. p. 33.1(a); Tex. R. Evid. 103(a)(1). Issues thirty-eight and
thirty-nine are overruled.

 Appellant again claims ineffective assistance of counsel in issues forty and forty-one. Appellant complains trial defense counsel was ineffective because he did not request
limiting instructions at the time appellant's wife was impeached by her prior statement.
Appellant points to Guajardo's testimony: that she didn't tell Canales she was afraid of
what appellant would do to her; when he left in his blue Honda; that she never said
appellant was going to go shoot-up her boyfriend Gonzalez, et cetera. The State used a
blow-up of her prior inconsistent statement. Though this statement was admitted for the
limited purpose of impeachment, the State used it for substantive purposes, according to
appellant. Because defense counsel did not object, appellant admits error was waived
citing In re A.B., 133 S.W.3d. 869, 874 (Tex. App.-Dallas 2004, no pet.) According to the
argument, because counsel did not object, he was ineffective.

 As stated previously, trial counsel should ordinarily be afforded an opportunity to
explain his actions before being found ineffective. Rylander, 101 S.W.3d at 111. Like the
majority of cases, the record on this direct appeal is undeveloped and cannot adequately
reflect the motives behind trial counsel's actions. Mallet, 65 S.W.3d at 63. Appellant
again fails to demonstrate that trial counsel's performance was deficient because it fell
below an objective standard of reasonableness. Thus he fails to meet the first prong of
Strickland. See Strickland, 466 U.S. at 687 (defendant must first show that counsel's
performance was deficient; this requires showing that counsel made errors so serious that
counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth
Amendment); see also Mallet, 65 S.W.3d at 63. These issues are overruled.

 Finally, appellant contends defense counsel was ineffective because he did not
object to the prosecutor's use of State's Exhibit 13 (6) as substantive evidence and did not
object when the prosecutor argued "he told Guajardo he went to shoot her boyfriend." 
Again, because the record is undeveloped, appellant fails to meet his burden under the first
prong of Strickland. See Strickland, 466 U.S. at 687; Rylander, 101 S.W.3d at 111;
Mallet, 65 S.W.3d at 63. This issue is overruled.

 The judgment of the trial court is affirmed.


 DON WITTIG 

 Retired Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and filed 

this the 30th day of August, 2007.

1. Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas
pursuant to the government code. See Tex. Gov't Code Ann. § 74.003 (Vernon 2005).
2. Appellant's counsel on appeal omitted the standard of review for unobjected to charge error. 
3. Appellate counsel is admonished to use proper language and follow the appellate rules. See Tex.
R. App. P. 38.1(h), 38.4. Failure to do so in the future may result in our requiring rebriefing or the imposition
of appropriate sanctions, or both.
4. In other words, appellant's attempt to characterize this hearing as an objection to all of Guerrero's
testimony fails. Tex. R. App. P. 33.1(a)1. 
5. See our discussion of this issue supra.
6. Jessica Guajardo's statement of October 6, 2003 was introduced for impeachment.