

# NUMBER 13-06-00701-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

MANUEL SALINAS GARCIA JR. A/K/A
MANUEL SALINAS-GARCIA,                                    Appellant,

v.

THE STATE OF TEXAS,                                      Appellee.

### On appeal from the 275th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Benavides and Vela
### Memorandum Opinion by Chief Justice Valdez

Following a jury trial, appellant, Manuel Salinas Garcia Jr. a/k/a Manuel Salinas-Garcia, was convicted of murder, a first-degree felony, and attempted murder, a second-degree felony. *See* TEX. PENAL CODE ANN. §§ 15.01, 19.02 (Vernon 2003). The jury

assessed punishment at twenty years' imprisonment plus a $10,000 fine for the offense of murder and ten years' imprisonment plus a $10,000 fine for the offense of attempted murder. *See id.* §§ 12.32, 12.33 (Vernon Supp. 2009). The trial court ordered the sentences to run concurrently. By three issues, Garcia contends that the trial court abused its discretion by: (1) allowing the admission of a prior statement made under oath by Garcia; (2) failing to charge the jury on the lesser-included offense of criminally negligent homicide; and (3) failing to give the jury a definition of "reasonable doubt." We affirm.

## I. BACKGROUND[1]

Luis Lopez, his brother Carlos Lopez, and their friend, Jaime Alvarado, spent the majority of the evening hours of June 2, 2005, and the early morning hours of June 3, "hanging out" and drinking at their friend Jason's house and at a club. After leaving the club at approximately 2:00 a.m., the men returned to Jason's house and continued "hanging out." Throughout the night, Luis left the group several times to visit his girlfriend who lived nearby at Evergreen Apartments. At some point, Luis's girlfriend became upset that he was going out with his friends, and she and Luis argued. Luis left the apartment and went back to Jason's house but later returned to his girlfriend's apartment. At approximately 3:00 a.m., Luis, who was highly intoxicated, returned to Jason's house upset. Although Luis had been wearing khaki shorts, a Polo shirt, and shoes when he left Jason's, he returned wearing only a Polo shirt and boxer shorts. Carlos testified that Luis was upset because "some guys" at Evergreen Apartments "were starting stuff with [Luis]." Luis suggested that he and his friends "go fuck those guys up." Carlos told Luis, "No man. Go inside, have a drink, chill out." Luis complied, but approximately twenty minutes later,

---

[1] Because Garcia does not challenge the sufficiency of the evidence supporting his convictions, only a brief recitation of the facts is necessary. *See* TEX. R. APP. P. 47.1.

Luis and Alvarado attempted to leave Jason's in Luis's truck. Carlos took the keys away from Luis but then agreed to let Luis drive Alvarado and him to Evergreen Apartments.

That same night, a group of people, including Garcia, were "partying" at Evergreen Apartments. Garcia testified that he arrived at Evergreen Apartments at 9:00 or 9:30 p.m. on June 2, 2005, to party with some of his friends. Garcia did two beer bongs and hung out with his friends by the pool.[2] Garcia continued partying with his friends, going back and forth between an apartment unit and the pool. In the early morning hours of June 3, 2005, Garcia noticed a man, later identified as Luis, wearing "short shorts" and "being rude" to people at the party.[3] Garcia stated that Luis asked "if we were going to be there," to which Garcia responded, "Yeah we're going to be here." Luis walked away and, about thirty minutes later, Garcia and a few others left the pool and walked back towards the apartment complex.

When Luis, Carlos, and Alvarado arrived at the apartment complex, Luis got out of the truck and began walking towards the apartments. Carlos and Alvarado caught up with him, and when they rounded a corner, they saw a group of people, including Garcia. The two groups walked towards each other, and Luis asked Garcia's friends "who was talking shit." Luis and one of Garcia's friends began to argue, and a fight between the two groups ensued.

Carlos testified that when the fight began, Garcia pushed Luis, and Luis stepped back and hit one of Garcia's friends. Carlos stated that Garcia then punched Luis, so

[2] Garcia defined a "beer bong" as a "funnel with a long tube" used to "chug beer."

[3] Other witnesses described Luis's shorts as shorts for "girls" that portrayed a "Tinker Bell" symbol and had the word "flirty" written across the front.

Carlos punched Garcia and began fighting with one of Garcia's friends. During the fight, Carlos saw Garcia and two other men hitting Luis and rushed to help him. When Carlos reached Luis, Luis was bloody and swaying and fell into Carlos's arms. Carlos testified that Garcia came up behind him and hit him several times in the back as Carlos lowered Luis to the ground. Because Carlos was focused on Luis, he did not immediately realize that he had been stabbed. Carlos stated that Garcia and his friends ran away, and Carlos began administering CPR to Luis.

Garcia testified that after Luis asked, "who was talking shit," Luis hit him, and he fell to the ground. Garcia stated that Luis positioned himself on top of Garcia and continued hitting him. Garcia testified that he tried to push Luis off of him and then heard someone say, "Saca lo. Saca lo[,]" meaning "take it out." Garcia was unsure who made the statement; however, upon hearing it, Garcia took a knife out of his pocket, flipped it open to expose the blade, and stabbed Luis one time in an alleged attempt to defend himself. Garcia stated that he began "blanking out" after he stabbed Luis and then got up and ran away. When asked if he remembered stabbing Carlos, Luis replied. "I don't remember stabbing him, but I must have because I was the only one with the knife there."

Luis sustained six stab wounds, three to his chest area and three to his flank area; the fatal stab wound penetrated the base of his aorta. Shortly after the fight, Luis was pronounced dead in the emergency room of McAllen Medical Center. Carlos sustained seven stab wounds and was hospitalized for seven days.

The court instructed the jury on murder and manslaughter, but it denied Garcia's request for an instruction on criminally negligent homicide. The jury found Garcia guilty of the murder of Luis and the attempted murder of Carlos. *See* TEX. PENAL CODE ANN. §§

15.01, 19.02. The jury assessed punishment at twenty years' imprisonment plus a $10,000 fine for the offense of murder and ten years' imprisonment plus a $10,000 fine for the offense of attempted murder. *See id.* §§ 12.32, 12.33. The sentences were ordered to run concurrently. This appeal ensued.

## II. ADMISSION OF PRIOR STATEMENT

By his first issue, Garcia contends that the trial court abused its discretion by allowing the State to question him about testimony he gave in a prior trial "in an effort to show that [Garcia] had [previously] lied about using drugs."[4] On appeal, Garcia argues that his prior testimony was "irrelevant, inadmissible, and harmful." The State contends that Garcia has failed to preserve error because he did not raise a relevancy objection to the testimony in question at trial.

## A. Relevant Facts

After the State began cross-examining Garcia, a hearing was held outside the presence of the jury to determine whether the State could question Garcia about his prior testimony concerning drug use and an arrest for the possession of marijuana. During the hearing, the State asserted that it wanted to question Garcia about his prior testimony in order to attack his credibility by demonstrating that "he lied in front of the jury last time." Defense counsel objected on the grounds that such questioning by the State "would be extremely prejudicial." Argument between the State and defense counsel continued:

> [The State]: [The door] [d]oesn't have to be opened in this case. I can always use somebody's prior testimony under oath to impeach their credibility if they lied under oath, whether it is at this hearing, or regarding the same

---

[4] Trial originally commenced on May 23, 2006, but ended in mistrial on May 26, 2006. The testimony in question was apparently given by Garcia at some point during the original trial.

5

circumstances, if they have lied under oath at any time I'm allowed to bring that before the jury.  And in this case he lied under oath.

[Defense counsel]:    Your Honor, we cannot in any aspect [sic] because of the prejudicial effect get into what happened in the last trial.  It has probative value, but it is—

[The State]:    I disagree.

[Defense counsel]:    Under 403.

[The State]:    It is the balancing test, Your Honor.

[Defense counsel]:    It specifically—statements, if unfairly prejudiced by the testimony, which it has not been opened yet [sic], there's been no, none whatsoever, no evidence presented whatsoever about any type of other arrests, no questions asked about any—

[The State]:    I won't ask him about the arrest.  I will ask him if he lied under oath.  The issue was did he lie under oath when he was asked:  Do you use drugs?

[Defense counsel]:    Judge, you can't get into that, Judge.

[The State]:    There's no— if you're saying can't get into that because he lied, or because—

[Defense counsel]:    Your Honor, what is she impeaching if it hasn't been elicited from the stand?

[The State]:    The impeachment is that he lied under oath to a jury regarding the same incident.  I don't have to get into the arrest or ask him: Did you lie under oath about your drug usage?

The Court:    Will you ask him that?

[The State]:    I will ask him if he lied when he was asked under oath, do you use drugs, did you lie, period.

I don't have to ask about the arrest, the circumstances

6

of the arrest.  I don't have to ask him who he was with.

The Court:          If the form of the question is that way, I will allow it. Objection overruled.

[Defense counsel]:  Just as long as my objection is noted for the record under 403.

The Court:          Your objection is noted under 403.

[Defense counsel]:  Texas Rules of Evidence.

The Court:          Yes. . . .

The State continued cross-examining Garcia and then pursued the following line of questioning:

[The State]:  And you've been able to give some testimony before; is that correct?

[Garcia]:     Yes.

[The State]:  And at that time you were asked[,] . . . Do you use drugs?  Is that correct?

[Garcia]:     Yes.

[The State]:  Okay.  And your answer at that time was:  No.

[Garcia]:     Yes.  But I misunderstood the question.

[The State]:  Okay. . . . But your answer [sic] on the record at that time was: Do you use drugs?  And your answer at that time was: No, sir. Is that correct?

[Garcia]:     Yes.

[The State]:  Was that a lie?  Or the truth under oath?

[Garcia]:     Well, I thought that he was—

7

[The State]: That's not my question. Was that a lie or the truth?

[Garcia]: What are you asking?

[The State]: Do you use drugs? And your answer was: No, sir. Was that the truth? Or was that a lie?

[Garcia]: But when are you asking me?

[The State]: When you were asked under oath previously: Do you use drugs? And your answer was: No, sir.

[Garcia]: Prior to what? Or when?

[The State]: When we've been in court before, and on May 24th of 2006, [defense counsel] asked you: Do you use drugs? And you said: No, sir. Is that correct?

[Garcia]: I know.

[The State]: Do you recall that?

[Garcia]: Yes.

[The State]: Okay. Was that the truth? Or was that a lie?

[Garcia]: But what was the question asked?

[The State]: The question asked: Do you use drugs? And the answer was: No, sir. I'm asking you now, when you came to court and said that under oath, was your a lie [sic]?

[Garcia]: Yes. But you ain't [sic] letting me finish talking.

[The State]: And your answer is the reason you said[,] "[N]o, sir[,]" is because you didn't understand the question: Do you use drugs? Is that correct?

[Garcia]: I thought he said that night.

[The State]: Okay. But he didn't say "that night."

8

[Garcia]:    That's why I misunderstood the question.

**B.    Applicable Law**

To preserve error, a defendant must make a timely and specific objection, and the complaint on appeal must comport with the trial objection.    *See* TEX. R. APP. P. 33.1(a)(1)(A) (providing that, in order to present a complaint on appeal, a timely request, objection, or motion must have been made to the trial court, which "states the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context"); *see also Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004).

**C.    Analysis**

At trial, Garcia specifically objected to the testimony under Texas Rule of Evidence 403.  *See* TEX. R. EVID. 403.  However, on appeal, Garcia contends that the trial court erred in allowing the State to elicit testimony from his prior trial by arguing that the testimony was not relevant under rule 401.  *See id.* at R. 401.

Texas Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  *Id.*  Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."  *Id.* at R. 403.  Thus, "Rule 403 applies only to relevant evidence."

9

*Long v. State*, 823 S.W.2d 259, 271 (Tex. Crim. App. 1991).

An objection under rule 403 does not preserve error under rule 401. *See* Tex. R. App. P. 33.1(a)(1)(A); *Zimmerman v. State*, 860 S.W.2d 89, 97-98 (Tex. Crim. App. 1993) (Baird, J., concurring) (noting that a relevancy objection does "not preserve error as to any violation of Rule 403"), *vacated on other grounds*, 510 U.S. 938 (1993); *Sony v. State*, 307 S.W.3d 348, 355-56 (Tex. App.–San Antonio 2009, no pet.) (holding that a defendant who raised only a rule 401 complaint failed to preserve a complaint under rule 403); *Lopez v. State*, 200 S.W.3d 246, 251 (Tex. App.–Houston [14th Dist.] 2006, pet. ref'd) (noting that "A rule 403 objection is not implicitly contained in [a] relevancy . . . objection[]; rather, a specific rule 403 objection must be raised to preserve error."). Garcia's trial counsel did not argue that Garcia's prior testimony was irrelevant; instead, he specifically stated that while the testimony "has probative value," it is inadmissible "under [rule] 403" because Garcia would be "unfairly prejudiced" by its admission. Based on the record before us, Garcia raised only a rule 403 objection to the admission of his prior testimony. Thus, Garcia waived his relevancy complaint.

On appeal, Garcia also cites Texas Rules of Evidence 608 and 613; however, it is unclear whether he cites these rules to support his assertion that his prior testimony was irrelevant and therefore inadmissible, or if the rules are offered as alternate grounds for relief. *See* Tex. R. Evid. 608 (governing the admission of evidence regarding a witness's character or previous conduct), 613 (governing impeachment of witnesses with prior inconsistent statements) (Vernon 2003). Garcia's counsel did not object to Garcia's prior testimony based on character evidence under rules 608 or 613. And, although the issue of impeachment by a prior inconsistent statement was discussed, Garcia's counsel

continually insisted that his objection was solely based on rule 403.  Thus, Garcia waived any appellate complaint based on a rule other than 403.  *See* TEX. R. APP. P. 33.1(a)(1)(A); *Heidelberg*, 144 S.W.3d at 537.

Even if we assume that Garcia preserved error in the admission of his prior testimony, the error is not of constitutional dimension.  *See Johnson v. State*, 967 S.W.2d 410, 416-17 (Tex. Crim. App. 1998) (applying harm analysis under Texas Rule of Appellate Procedure 44.2(b) where the State failed to lay the proper predicate for the admissibility of the defendant's statement).  Texas Rule of Appellate Procedure 44.2(b) dictates that a non-constitutional error "that does not affect substantial rights must be disregarded."  TEX. R. APP. P. 44.2(b).  The court of criminal appeals has construed this to mean that an error is reversible only when it has a substantial and injurious effect or influence in determining the jury's verdict.  *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008).  We will not overturn the conviction if we have fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but slight effect.  *Id.*

Garcia contends that "[a]ny effort to show that [he] was someone who would lie under oath would have a substantial effect on the jury and the result reached" because "the credibility of [Garcia] and his friends was pitted against the credibility of [other witnesses]."  During the State's questioning, Garcia explained to the jury that he misunderstood a question asked during his previous testimony and that he had not intended to lie under oath when he answered it.  On re-direct examination, Garcia again explained that he had not intended to lie under oath but that he had simply misunderstood the question.  In light of the evidence explaining his prior incorrect answer, we believe that the error, if any, of allowing the State to impeach Garcia's credibility had but a slight effect, and was therefore

11

harmless.  *See* TEX. R. APP. P. 44.2(b).  We overrule Garcia's first issue.

### III. LESSER-INCLUDED OFFENSE

By his second issue, Garcia contends that the trial court abused its discretion by denying his request to charge the jury on the lesser-included offense of criminally negligent homicide.  *See* TEX. PENAL CODE ANN. § 19.05 (Vernon 2003).

### A.    Standard of Review

We use a two-part test to determine whether a defendant is entitled to an instruction on a lesser-included offense.  "First, the lesser-included offense must be included within the proof necessary to establish the offense charged; second, there must be some evidence in the record that if the defendant is guilty, he is guilty only of the lesser-included offense."  *Young v. State*, 283 S.W.3d 854, 875 (Tex. Crim. App. 2009).  If the elements of the lesser offense are "'established by proof of the same or less than all the facts required to establish the commission of the offense charged,'" the first prong of the test is satisfied.  *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007) (quoting TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (Vernon 2006)).

The second prong asks whether there is evidence that supports giving the instruction to the jury; anything more than a scintilla of evidence may suffice to entitle the defendant to a charge on the lesser-included offense.  *Id.*  The evidence produced must establish the lesser-included offense as "a valid, rational alternative to the charged offense."  *Id.* (quoting *Forest v. State*, 989 S.W.2d 365, 367 (Tex. Crim. App.1999)).

### B.    Applicable Law

Criminally negligent homicide is a lesser-included offense of murder.  *See Grotti v. State*, 273 S.W.3d 273, 276 (Tex. Crim. App. 2008); *Cardenas v. State*, 30 S.W.3d 384,

12

392 (Tex. Crim. App. 2000); *see also Guerrero v. State*, No. 13-05-00709-CR, 2008 WL 5179740, at *8 (Tex. App.–Corpus Christi Mar. 13, 2008, no pet.) (mem. op., not designated for publication). Thus, we must consider whether there was evidence adduced at trial that would support giving a criminally negligent homicide instruction to the jury. *See Hall*, 225 S.W.3d at 536. In order to meet the second prong, there must be some evidence that would permit a rational jury to find that if Garcia is guilty, he is guilty only of criminally negligent homicide. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09; *Hall*, 225 S.W.3d at 536.

Murder, manslaughter, and criminally negligent homicide differ in the culpable mental state required. *See* TEX. PENAL CODE ANN. §§ 19.02(b)(1)-(2), 19.04(a), 19.05(a) (Vernon 2003). A person who causes the death of another commits (1) murder if he acts intentionally or knowingly, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; (2) manslaughter if he acts recklessly; and (3) criminally negligent homicide if he acts in a criminally negligent manner. *See id.* §§ 19.02(b)(1)-(2), 19.04(a), 19.05(a). The requisite mental states are defined as follows:

> (a) A person acts intentionally . . . with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
>
> (b) A person acts knowingly . . . with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly . . . with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.
>
> (c) A person acts recklessly . . . with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its

13

disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

(d) A person acts with criminal negligence . . . with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*Id.* § 6.03 (Vernon 2003).

When considering whether an instruction on criminally negligent homicide was required, we examine the case in light of its particular facts and circumstances and determine whether the defendant was aware of the risk of death associated with his conduct. *See Thomas v. State*, 699 S.W.2d 845, 850 (Tex. Crim. App. 1985). "Before a charge on criminally negligent homicide is required, the record must contain evidence showing an unawareness of the risk." *Whipple v. State*, 281 S.W.3d 482, 503 (Tex. App.–El Paso 2008, pet. ref'd) (citing *Mendieta v. State*, 706 S.W.2d 651, 653 (Tex. Crim. App. 1986); *Licon v. State*, 99 S.W.3d 918, 928 (Tex. App.–El Paso 2003, no pet.)).

**C. Analysis**

In support of his argument that he was entitled to an instruction on criminally negligent homicide, Garcia points to the following statements made during his testimony:

[Defense Counsel]: Did you intend to kill Luis Lopez?

[Garcia]: No, sir.

[Defense Counsel]: What did you intend to do?

[Garcia]: To protect myself and get him off of me.

14

. . . .

[Defense Counsel]: Did you know the severity of Luis' wounds?

[Garcia]: No, I didn't.

Although this testimony serves as evidence from which a jury could determine that it was not Garcia's conscious desire that his actions would result in Luis' death, it does not show that Garcia was unaware of the risk created by his conduct. *See* TEX. PENAL CODE ANN. § 6.03; *see also Pitonyak v. State*, 253 S.W.3d 834, 847 (Tex. App.–Austin 2008, pet. ref'd) ("[I]t is not sufficient that the jury might have chosen to disbelieve that appellant [acted] intentionally or knowingly . . . there must be evidence that appellant was guilty only of acting recklessly or with criminal negligence."). On direct examination, Garcia testified that he and Luis engaged in an altercation and that, at some point, Luis was on top of Garcia as Garcia lay on the ground. Garcia testified that he tried to push Luis off of him and then heard someone say, "Saca lo. Saca lo," meaning "take it out." Garcia stated that he was unsure whether the statement was made by one of his friends or one of the men with Luis. However, upon hearing the statement, Garcia took a knife out of his pocket, flipped it open to expose the blade, and stabbed Luis. On cross-examination, Garcia acknowledged that stabbing someone with a knife was an act clearly dangerous to human life and that he intended to harm Lopez by stabbing him.

Because there is no evidence that Garcia was unaware of the risk associated with his conduct, the trial court did not err by denying his request to charge the jury on the lesser-included offense of criminally negligent homicide. *See Pitonyak*, 253 S.W.3d at 847; *Whipple*, 281 S.W.3d at 503. We overrule Garcia's second issue.

## IV. Reasonable Doubt

By his third issue, Garcia contends that the trial court abused its discretion by failing to give a jury instruction on the definition of reasonable doubt.

Under former case law, a jury instruction on the definition of reasonable doubt was required; however, the court of criminal appeals explicitly overruled this requirement in *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000). Garcia expresses a general disagreement with *Paulson* and argues that its holding "should be revisited." However, as recently as April of this year, the court of criminal appeals, citing *Paulson*, held that trial courts "may or may not define the term 'reasonable doubt'" and that "'the better practice'" is to avoid defining it. *Mays v. State*, No. AP-75,924, 2010 WL 1687779, at *12 (Tex. Crim. App. Apr. 28, 2010) (quoting *Paulson*, 28 S.W.3d at 573). Because we are bound by existing precedent establishing that a trial court need not define reasonable doubt, we overrule Garcia's third issue. *See Wiley v. State*, 112 S.W.3d 173, 175 (Tex. App.–Fort Worth 2003, pet. ref'd).

## V. Conclusion

Having overruled all of Garcia's issues on appeal, we affirm the judgment of the trial court.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
Tex. R. App. P. 47.2(b)
Delivered and filed the
19th day of August, 2010.