# NO. 12-22-00229-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DAVID CHANCE STARR,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant, David Chance Starr, appeals from his conviction and sentence for possession of a controlled substance. In two issues, Appellant challenges the sufficiency of the evidence to support his conviction and the admission of evidence on gang membership at the punishment phase. We affirm.

## BACKGROUND

On March 23, 2021, Deputy Corey Cameron of the Smith County Sheriff's Office went to a house on Holiday Hills Road in Smith County, Texas, with the intent of arresting Appellant on an outstanding arrest warrant.[1] Cameron entered the residence with permission of the homeowner, Patricia Venegas, called out Appellant's name, and located him in the doorway of a back bedroom. Daniel Nash, Venegas's son and Appellant's friend, was also in the bedroom. Cameron arrested Appellant and took him outside. After law enforcement placed Appellant in the patrol car, he began striking the car window with his head, apparently either in an effort to break the window or hurt himself. Cameron noted that on the day of the arrest, Appellant's appearance was consistent with what he knew to be signs of chronic methamphetamine use.

---

[1] Cameron went to the address to locate Appellant on information from Davenport. Davenport was the primary person in charge of investigating Appellant.

Nash informed Cameron that another person with an outstanding arrest warrant was present, namely Appellant's then-girlfriend, Tabitha Love. Cameron located Love lying on a sofa in the living room underneath a pile of clothing and arrested her. In the course of her arrest, Love informed Cameron that Appellant had a substantial amount of illegal drugs in the back bedroom. Venegas gave law enforcement permission to search the house. Investigator Glenn Davenport, then a special agent with the East Texas Anti-Gang Unit, conducted the search of the residence and located a small pink bag on top of the mattress in the back bedroom. The bag contained what was later confirmed to be methamphetamine. Thereafter, Appellant was charged by indictment with the offense of possession of a controlled substance in the amount of more than one gram but less than four grams.[2] Appellant pleaded "not guilty" to the charged offense, and this matter proceeded to a jury trial.

At trial, Davenport testified that when he arrived at Venegas's house, before finally deciding whether to conduct a search, he attempted to speak with Appellant, but Appellant was "irate" and did not say much. Nash informed him that there was "probably" methamphetamine in the house, but it was not his. Davenport testified that both Nash and Love told him they had previously seen Appellant possess the pink bag containing the methamphetamine. During the search, in addition to the pink bag, Davenport found some Newport cigarettes and a socket wrench sitting on top of the mattress. Davenport knew that Newport was Appellant's preferred cigarette brand, and knew that Appellant frequently worked on motorcycles. Also in the back bedroom, Davenport found some paper articles and documents that bore Appellant's name, which indicated to Davenport that Appellant had been staying in that bedroom.

Nash testified that he and Appellant were both asleep when law enforcement arrived. Appellant had been sleeping in the back bedroom with Nash because Appellant and Love had been arguing. Nash stated that he did not know about the methamphetamine's presence or how it got into the bedroom, but stated that Love had been "in and out" of the bedroom while Appellant was asleep. Nash also told police about Love's outstanding warrant because law enforcement asked if anyone else in the house had warrants. Similarly, Nash told Davenport that there was marijuana in the bedroom, inside his backpack, because Davenport instructed him to be truthful. Nash did not recall telling Davenport that the pink bag containing the methamphetamine belonged to Appellant.

---

[2] TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (c) (West 2023).

Venegas testified that Appellant had been sleeping in the back bedroom with Nash "every night," while Love slept in the living room. Venegas consented to the search of her house because she had nothing to hide, as she was unaware of the methamphetamine's presence. She had never seen Appellant or Nash with a pink bag but heard Love asking the officers for her pink purse during Love's arrest.

At the conclusion of the evidence, the jury found Appellant "guilty."

During the punishment phase, the State presented the testimony of Investigator Chris Miller, who is employed by the Smith County District Attorney's office but is assigned to the East Texas Anti-Gang Unit. Miller previously served as a gang intelligence officer with the Tyler Police Department for over twenty years. Miller stated that in his experience, gang members are usually involved in multiple illegal activities, including murder, sex trafficking, robbery, drug trafficking, home invasions, and automobile burglaries. He testified that Appellant had been documented by the Texas Department of Criminal Justice as a street gang member since 2001 (when he admitted to law enforcement that he was a member of a local street gang known as the East Side Locos) and a prison gang member since 2018. The jury saw photographs of several tattoos on Appellant's upper body. Miller testified that several of Appellant's tattoos were consistent with either those seen on members of the East Side Locos or members of a prison gang known as "Tango Blast."

The charge of the court on punishment alleged that 1) in 2007, Appellant was finally convicted of the felony offense of aggravated assault with a deadly weapon, and 2) in 2016, following his release from confinement for the aggravated assault, Appellant was finally convicted of the felony offense of unlawful possession of a firearm by a felon. Appellant pleaded "true" to both allegations. The jury assessed punishment of forty-five years' imprisonment.[3] This appeal followed.

---

[3] Possession of a controlled substance as charged is usually a third-degree felony, punishable by imprisonment for a term of no less than two years and no more than ten years. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (c) (West 2023); TEX. PENAL CODE ANN. § 12.34(a) (West 2023). However, because Appellant pleaded "true" to the State's enhancement allegations regarding his prior felony convictions, the jury could assess a punishment of either life imprisonment, or imprisonment for a term of no less than 25 years and no more than 99 years. TEX. PENAL CODE ANN. § 12.42(d) (West 2023).

In his first issue, Appellant argues that the evidence was legally insufficient to support the verdict at trial and subsequent judgment because no reasonable fact finder could conclude that he legally possessed the methamphetamine.

**Standard of Review**

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). In Texas, the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). In reviewing the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict and determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Brooks*, 323 S.W.3d at 898–99 (Tex. Crim. App. 2010). Juries are permitted to draw multiple reasonable inferences from direct or circumstantial evidence. *Anderson v. State*, 416 S.W.3d 884, 891 (Tex. Crim. App. 2013). When the record supports conflicting inferences, a reviewing court must presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Id.* A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances; the duty of a reviewing court is to ensure that the evidence presented supports a conclusion that the defendant committed the crime charged. *See Hernandez v. State*, 190 S.W.3d 856, 864 (Tex. App.–Corpus Christi 2006, no pet.); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured against the offense(s) as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict

4

the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

## Applicable Law

To prove unlawful possession of a controlled substance, the State must prove that Appellant (1) exercised actual care, control, and management over the contraband and (2) knew the substance in his possession was contraband. *Nixon v. State*, 928 S.W.2d 212, 215 (Tex. App.—Beaumont 1996, no pet.) (citing *King v. State*, 895 S.W.2d 701, 702 (Tex. Crim. App. 1995)). Because control over contraband may be jointly exercised by more than one person, the State need not prove exclusive possession of the contraband. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985); *State v. Derrow*, 981 S.W.2d 776, 799 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd). A defendant's presence, without more, is insufficient to establish possession. *Oaks v. State*, 642 S.W.2d 174, 177 (Tex. Crim. App. 1982). When an accused is not in exclusive possession of the location where contraband is found, additional independent facts and circumstances may affirmatively link him to the contraband. *Nixon*, 928 S.W.2d at 215.

A nonexclusive list of factors relevant to knowing possession—or "affirmative links"—includes (1) the defendant's presence during the search, (2) whether the contraband was in plain view, (3) the contraband's proximity and accessibility to the defendant, (4) whether the defendant was under the influence of narcotics, (5) whether the defendant possessed other contraband, (6) whether the defendant made incriminating statements when arrested, (7) whether the defendant attempted to flee, (8) whether the defendant made furtive gestures, (9) whether there was an odor of contraband, (10) whether other contraband or drug paraphernalia was present, (11) whether the defendant owned or had a right to possess the place where contraband was found, (12) whether the place where the drugs were found was enclosed, (13) whether the defendant was found with a large amount of cash, and (14) whether the defendant's conduct indicated consciousness of guilt. *Tate v. State*, 500 S.W.3d 410, 414 (Tex. Crim. App. 2016) (quoting *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006)). An affirmative link is a shorthand expression of what must be proven to establish that a person possessed a controlled substance knowingly or intentionally. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). In other words, "the concept of an affirmative link is simply one way to describe the sufficiency of circumstantial evidence to prove intent to possess drugs." *Brochu v.*

***State***, 927 S.W.2d 745, 751 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (citing ***Brown***, 911 S.W.2d at 747). Although these factors can help guide a court's analysis, ultimately the inquiry remains that set forth in ***Jackson***—whether, based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, the jury was rationally justified in finding guilt beyond a reasonable doubt. ***Tate***, 500 S.W.3d at 414; *see* ***Jackson***, 443 U.S. at 318-19, 99 S. Ct. at 2789. "It is ... not the number of links that is dispositive, but rather the logical force of all the evidence, direct and circumstantial." ***Evans***, 202 S.W.3d at 162.

## Analysis

Appellant urges the evidence does not contain sufficient affirmative links to demonstrate he knowingly possessed the methamphetamine. He asserts that he did not make any statements about the contraband when arrested, did not appear to be under the influence, did not attempt to flee, and did not have any money on his person. Appellant further argues that other individuals had access to the bedroom in which the drugs were found, and that the evidence in this case shows only that he was in the presence of the methamphetamine.

However, the evidence includes several factors linking Appellant to the contraband. Appellant was present in Venegas's house directly prior to the search and the contraband was found in an enclosed space, namely the bedroom where he had just been sleeping (and therefore to which he had access). The pink bag containing the contraband was in plain view and readily visible to anyone who entered the bedroom. *See* ***Grant v. State***, 989 S.W.2d 428, 434 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Cameron testified that Appellant began erratically striking the patrol car window with his head after his arrest, and that Appellant looked on that day as Cameron would expect a frequent methamphetamine user to look, both indications that Appellant was under the influence of narcotics. Other items of contraband were present in the bedroom, namely marijuana in Nash's backpack, although Nash admitted ownership of the marijuana. Appellant did not own Venegas's house, but the testimony of Venegas and Nash indicated that Appellant had been jointly possessing the bedroom for several nights. Each of these factors connects Appellant to the contraband and supports a finding that Appellant knowingly exercised care, custody, control, or management over same, even if that control was not exclusive. *See* ***Espino-Cruz v. State***, 586 S.W.3d 538, 543 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd).

6

Although some of the witness testimony conflicted regarding Appellant's relationship to the pink bag, we presume that the jury resolved those conflicts in favor of the prosecution and defer to that resolution. *See Clayton*, 235 S.W.3d at 778. Based on the combined and cumulative force of this evidence and the reasonable inferences therefrom, we conclude that a rational jury could have found beyond a reasonable doubt that Appellant knowingly possessed methamphetamine. *See Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2789, 61 L. Ed. 2d 560; *Tate*, 500 S.W.3d at 414; *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c). Therefore, the evidence was legally sufficient to support Appellant's conviction for possession of a controlled substance. *See Brooks*, 323 S.W.3d at 895. We overrule Appellant's first issue.

**EVIDENCE OF GANG AFFILIATION**

In his second issue, Appellant contends that the trial court erred by allowing the State to present evidence of Appellant's gang affiliations during the punishment phase of trial because the evidence was irrelevant, and because its probative value was substantially outweighed by the danger of unfair prejudice.

## Standard of Review and Applicable Law

A trial court has broad discretion in determining the admissibility of evidence presented during the punishment phase of trial and may admit evidence deemed relevant to sentencing, including evidence of other crimes or bad acts. *Schultze v. State*, 177 S.W.3d 26, 40 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). We review the trial judge's admission of evidence for abuse of discretion, and we will uphold the trial court's decision if it falls within the zone of reasonable disagreement. *Henley v. State*, 493 S.W.3d 77, 82-83 (Tex. Crim. App. 2016); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

Under the Texas Rules of Evidence, relevant evidence is generally admissible. TEX. R. EVID. 402. Under Article 37.07, Section 3(a) of the Texas Code of Criminal Procedure, which governs the admissibility of evidence during the punishment phase of a noncapital trial, evidence may be offered by either party regarding "any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and … any other evidence of an extraneous crime or bad act." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West 2023).

Rule 403 of the Texas Rules of Evidence provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. "Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh'g). Only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value is Rule 403 applicable. *Young v. State*, 283 S.W.3d 854, 877 (Tex. Crim. App. 2009).

In general, a claim is preserved for appellate review only if (1) the complaint was made to the trial court by a timely and specific request, objection, or motion, and (2) the trial court either ruled on the request, objection, or motion, or refused to rule, and the complaining party objected to that refusal. TEX. R. APP. P. 33.1(a); *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). An objection should be made as soon as the ground for objection becomes apparent. *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995).

**Analysis**

Texas law permits the admission of a defendant's gang affiliations during punishment, as gang membership is relevant because it relates to the defendant's character. *See Beasley v. State*, 902 S.W.2d 452, 456 (Tex. Crim. App. 1995); *see also Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018) ("[E]vidence that the defendant is an active member of a gang that regularly engages in criminal activities ... is almost always relevant for sentencing purposes."). Membership in a gang is also among the type of "bad acts" that are relevant to sentencing, and evidence thereof is explicitly permitted by Article 37.07 of the Code of Criminal Procedure. *Sierra v. State*, 266 S.W.3d 72, 78 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). If the gang is involved in misconduct or illegal activity, it is not necessary to link the defendant to bad acts so long as the factfinder is (1) provided with evidence of the defendant's gang membership, (2) provided with evidence of the gang's character and reputation, (3) not required to determine if

8

the defendant committed the bad acts or misconduct, and (4) only asked to consider the reputation or character of the accused. *Beasley*, 902 S.W.2d at 457.[4]

Miller's testimony fulfills the first two *Beasley* factors. He testified that Appellant was listed in a database of known gang members maintained by the TDCJ as a member of both a "criminal street gang" and a prison gang classed as a "security threat group." *See Aguilar v. State*, 29 S.W.3d 268, 270 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (description of a gang as a "criminal street gang" sufficient to establish the gang's bad reputation and satisfy the second *Beasley* factor); *see also Harris v. State*, No. 2-03-417-CR, 2005 WL 2100466, at *2 (Tex. App.—Fort Worth Aug. 31, 2005, no pet.) (mem. op., not designated for publication) (second *Beasley* factor does not require evidence of specific criminal acts or types of criminal activity). The jury saw photographs of Appellant's tattoos, and Miller testified as to their meanings and association with Appellant's membership in both gangs. Finally, Miller testified that in 2001, Appellant admitted his membership in the East Side Locos to law enforcement. This evidence satisfies the test articulated in *Beasley* and is therefore generally relevant evidence of Appellant's character in the punishment phase of trial.[5]

Appellant next contends that the probative value of the evidence of Appellant's gang membership outweighed its prejudicial effect under Rule 403, because the evidence "did not contribute to the jury's mission to formulate the sentence" in this matter.[6] However, the record shows that Appellant did not raise a specific Rule 403 objection during trial regarding any of the evidence of his gang affiliations. Defense counsel initially objected to the photographs of Appellant's tattoos based on relevance and his Fifth Amendment right to remain silent, both of which the trial court overruled. Counsel then requested a running objection to "the entire testimony regarding criminal activity of street gangs through the years," "this entire line of questioning," and "the testimony of the officer." The trial court stated that defense counsel was

---

[4] Even if a defendant is no longer affiliated with the gang at the time of the offense, evidence that he was a gang member is relevant, and therefore admissible, because it relates to his character. *Ho v. State*, 171 S.W.3d 295, 305 (Tex. App.–Houston [14th Dist.] 2005, pet. ref'd).

[5] Appellant neither objected at trial nor presents argument on appeal regarding the third and fourth *Beasley* factors.

[6] Appellant does not make any argument regarding the factors of the Rule 403 balancing test, which both trial courts and reviewing courts must use when ruling on Rule 403 objections. *See Erazo v. State*, 144 S.W.3d 487, 491–92 (Tex. Crim. App. 2004).

permitted a running objection "to all the exhibits that [counsel for the State] is getting ready to put in … and also to [Miller's] testimony." It is axiomatic that if a trial objection does not comport with arguments on appeal, error has not been preserved. Tex. R. App. P. 33.1(a); *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). An objection stating one legal theory may not be used to support a different legal theory on appeal. *See Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). Therefore, Appellant's objections during the punishment phase, which did not mention Rule 403, were insufficient to preserve his Rule 403 argument for our review.[7]

Even if Appellant had preserved error on this issue, he has not shown how the evidence caused unfair prejudice, which is necessary for exclusion of evidence under Rule 403. *See* Tex. R. Evid. 403. Appellant's involvement in a criminal street gang and a prison gang was highly probative of his character and the jury was entitled to know of such involvement when assessing Appellant's sentence. *See Beasley*, 902 S.W.2d at 456; *Beham*, 559 S.W.3d at 478. Although this type of evidence is obviously unfavorable to Appellant, as previously stated, only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value does Rule 403 bar admission, and Appellant has not shown such a disparity. *See Young*, 283 S.W.3d at 877. The trial court's ruling that the evidence of Appellant's gang affiliations was admissible was well within the zone of reasonable disagreement. *Henley*, 493 S.W.3d at 82-83. Because we cannot conclude that the trial court abused its discretion in admitting evidence of Appellant's gang membership at the punishment phase, we overrule Appellant's second issue.

## DISPOSITION

Having overruled Appellant's first and second issues, we ***affirm*** the judgment of the trial court.

JAMES T. WORTHEN
Chief Justice

---

[7] *See Merino v. State*, No. 12-15-00138-CR, 2016 WL 2941173, at *3 (Tex. App.—Tyler May 18, 2016, no pet.) (mem. op., not designated for publication) (objection that testimony created potential prejudice not sufficient to preserve Rule 403 complaint); *Sony v. State*, 307 S.W.3d 348, 356 (Tex. App.—San Antonio 2009, no pet.) (relevance objection did not preserve Rule 403 complaint); *Lopez v. State*, 200 S.W.3d 246, 251 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) ("A rule 403 objection is not implicitly contained in relevancy or 404(b) objections; rather, a specific rule 403 objection must be raised to preserve error.").

Opinion delivered June 14, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JUNE 14, 2023**

**NO. 12-22-00229-CR**

**DAVID CHANCE STARR,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-0934-21)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*