

# NUMBER 13-25-00006-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DREW RYAN BICKERSTAFF,                                **Appellant,**

**v.**

THE STATE OF TEXAS,                                        **Appellee.**

## ON APPEAL FROM THE 36TH DISTRICT COURT
## OF ARANSAS COUNTY, TEXAS

## MEMORANDUM OPINION

### Before Chief Justice Tijerina and Justices Peña and West
### Memorandum Opinion by Chief Justice Tijerina

Appellant Drew Ryan Bickerstaff was convicted of assault of a family/household member, with a previous conviction, a third-degree felony, *see* TEX. PENAL CODE § 22.01(b)(2)(A), and sentenced to ten years' incarceration.[1] By six issues appellant

---

[1] To protect the victim's identity in this case, we will use an alias. *See* TEX. R. APP. P. 9.8 cmt.,

contends that the evidence is insufficient to support the conviction (issue one), the trial court violated his right to confrontation (issues two through four), recordings of jail phone calls were inadmissible pursuant to Rule 901 (issue five), and the trial court erroneously admitted improper extraneous evidence (issue six).[2] We affirm.

## I. SUFFICIENCY OF THE EVIDENCE

By his first issue, appellant contends the evidence is insufficient to support the conviction because (1) "[t]he State never produced [the victim, Anna] . . . [and] prove[d] its case through a 911 call, photographs . . . medical record[s] . . . and excited utterances"; and (2) Anna recanted, admitted she lied, and reported she "received her injuries from a fight with someone else," which "created a reasonable doubt regarding [appellant's] guilt."

## A. Standard of Review and Applicable Law

In a sufficiency review, we consider all the evidence in the light most favorable to the verdict and determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). Sufficient evidence exists if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). The fact finder is the exclusive judge of the facts, the credibility of witnesses, and the weight

9.10(a)(3); *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

[2] We have reorganized and renumbered appellant's issues for purposes of this memorandum opinion.

2

to be given to their testimony. *Brooks*, 323 S.W.3d at 899.

We measure the sufficiency of the evidence in reference to the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A person commits the offense of assault by "intentionally, knowingly, or recklessly caus[ing] bodily injury to another," Tex. Penal Code § 22.01(a)(1). Punishment is a third-degree felony if (1) it was committed against a member of appellant's household and (2) appellant had been previously convicted of an offense under Chapter 22 wherein he was "finally convicted of the offense of assault caus[ing] bodily injury to a family member."[3] *Id.* § 22.01(b)(2)(A).

## B. The Evidence

In a 911 call, Anna reported that she was "severely beaten by her boyfriend." Rachel Marie Sanchez, a former paramedic, testified that she treated Anna's injuries on January 28, 2018, and Anna said "her husband had beat her." Sanchez observed that Anna "had a laceration to her forehead . . . on her forearm and to her shoulder blade." Anna's medical records from the date of the offense state she "was assaulted by her husband" and it is noted that he had been "beating her for weeks."

Amanda Cantu, who was a patrol deputy on January 28, 2018, was dispatched to an apartment complex where she spoke to Anna, who "was visibly upset, crying" and was "[i]n an emotional state of distress." Cantu "immediately noticed blood dripping from the side of [Anna's] head" and a blood stain on her shirt. Cantu saw that Anna "had popped

---

[3] Appellant does not list which elements he challenges on appeal, and it appears that he merely challenges evidence supporting a finding that he caused Anna's injuries.

3

blood vessels in one of her eyes, swelling and bruising near her mouth area, her lip, and . . . scrapes and bruises and scratches, red markings along her arms and her legs and shins and her back." The trial court admitted pictures of Anna's injuries. Cantu testified Anna "described the assault to have occurred" in the bedroom of her home. Cantu found a blood stain in the bedroom.

Officer Wesley Wayne Shaw, with the Portland Police Department, testified that he encountered the couple on December 19, 2018, and he observed Anna "had a large cut on the left side of her head . . . [W]as bleeding from her head very badly . . . and she had bloody handprints on her arm." Appellant "had some blood on his clothing and his hand from the wrists down were covered in blood." Officer Shaw stated appellant also had "some [blood] near his back pocket from trying to wipe the hands off . . . and near his stomach section above his belt line."

Sergeant Robert Jacob Delapaz, with the Portland Police Department, testified that on January 27, 2017, Anna and appellant were "living together." Sergeant Delapaz noted that Anna was "in distress" and "had . . . some visible markings [such as bruising, redness] on her person." The trial court admitted pictures of Anna's injuries from that incident. Sergeant Delapaz testified that on March 3, 2017, he was dispatched to the couple's residence, and when he arrived, inside the residence he "heard [appellant] screaming [at his young daughter]. . . Are you crying? Are you fucking kidding me? If you keep crying, I'm going to fucking hit you" and "if you don't quit crying, I'm going to beat the fuck out of you." Sergeant Delapaz explained that Anna and the couple's children were "distraught and crying." Sergeant Delapaz observed that Anna had injuries including "bruising and swelling to her face, her lips and her arm."

4

Sergeant Wayne Renfro with the Portland Police Department testified that on March 3, 2017, he went to the couple's residence and saw Anna was "clearly upset, had been crying," and three "young" children in the home were also "clearly upset and crying." Sergeant Renfro saw that Anna "had injuries to her face and both arms."

Paul Good, a former Portland City police officer, testified that on August 9, 2017, he was dispatched to appellant and Anna's address. Good stated that Anna "was pretty upset," and "said she had been hit in the lip by a phone." The trial court admitted pictures of Anna's injuries. Appellant was arrested that day due to "his intoxication level."

Kenneth Wayne Hodge, a former sergeant with the Portland Police Department, testified that on August 9, 2017, he responded with Good to a dispatch call where he encountered Anna outside her residence and observed that she "had a swollen lip." Hodge testified that appellant was inside the bedroom.

Julia Silos Gebauer, a former police officer with the Corpus Christi Police Department, testified that on September 8, 2018, she made contact with appellant after receiving a dispatch that "there was an assault in progress" at a bar. During her investigation, appellant referred to Anna as his wife and admitted that he had "punched" someone, an unnamed individual who is not involved in this case. On October 7, 2018, Gabauer received a dispatch for "another assault-in-progress. The caller stated that there was a male running after a female and then" Gabauer "made contact with [appellant and Anna] at the Valero." Anna "had a busted lip."

Jeremy Patterson, a former patrol sergeant with the Aransas County Sheriff's Office, testified that appellant had previously been convicted of assaulting Anna who "was described as somebody of [appellant's] household or a member of his family." The trial

court admitted evidence that appellant had previously pleaded guilty to "assault family violence by striking [Anna] about her face and arms with his fist."

## C.    Discussion

First, appellant asserts that the State did not call Anna to testify at trial; therefore, the evidence is insufficient. However, appellant cites no authority, and we find none, supporting a conclusion that the evidence is insufficient to support a conviction for assault of a family member because the victim fails to testify, and we decline to make such a determination. Appellant also complains that Anna recanted, and the officer admitted that her injuries could have been inflicted in another manner.[4] However, we defer to the fact finder as the sole judge of the weight of the evidence and the witnesses' credibility. *See Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020).

Viewing the evidence in the light most favorable to the verdict, the trier of fact could have reasonably found from the evidence and reasonable inferences that appellant caused Anna's injuries based on evidence that she told the paramedic that he had done so. Accordingly, we conclude that any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *See Whatley*, 445 S.W.3d at 166; *Brooks*, 323 S.W.3d at 898–99. We overrule appellant's first issue.

## II.    CONFRONTATION CLAUSE

By his second through fourth issues, appellant contends that his right to confrontation was violated by the trial court admitting a 911 call, Anna's medical report, and jail house phone calls because those statements were testimonial.

---

[4] Anna did not testify at the trial.

6

**A.    Standard of Review and Applicable Law**

We review evidentiary rulings for abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 417–18 (Tex. Crim. App. 2008). We will not disturb a trial court's ruling that is correct under any applicable legal theory and is reasonably supported by the record. *Id.* at 418.

In *Crawford v. Washington*, the Supreme Court held that the Sixth Amendment confrontation right applies not only to in-court testimony, but also to out-of-court statements that are testimonial in nature. 541 U.S. 36, 59 (2004). The Confrontation Clause forbids the admission of testimonial hearsay unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross examine the declarant. *Id.* at 68. This is so even if the statement "falls under a firmly rooted hearsay exception or bears particularized guarantees of trustworthiness." *Wall v. State*, 184 S.W.3d 730, 735 (Tex. Crim. App. 2006). Whether a particular out-of-court statement is testimonial is a question of law. *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008).

> The *Crawford* Court did not define "testimonial," but it noted three formulations of "core" testimonial evidence: (1) "ex parte in-court testimony or its functional equivalent," such as affidavits, custodial examinations, prior testimony not subject to cross-examination, or "similar pretrial statements that declarants would reasonably expect to be used prosecutorially," (2) "extrajudicial statements" of the same nature "contained in formalized testimonial materials," and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

*Kearney v. State*, 181 S.W.3d 438, 442 (Tex. App.—Waco 2005, pet. ref'd) (citation modified).

**B.    The 911 Call**

In *Ruth v. State*, the Fourteenth Court of Appeals explained that statements made in 911 calls were generally non-testimonial because those "statements are not given in

7

response to structured police questioning or with an eye to future legal proceedings but are initiated by a victim or witness to obtain police assistance." 167 S.W.3d 560, 569 (Tex. App.—Houston [14th Dist.] 2005, no pet.). In *Kearney*, the Sixth Court of Appeals, relying on *Ruth*, held that a 911 call was non-testimonial because the call "was [made] to report a robbery in progress and to summon emergency police help." 181 S.W.3d at 443. Both courts noted the following:

(1)     Testimonial statements are official and formal in nature.

(2)     Interaction with the police initiated by a witness or the victim is less likely to result in testimonial statements than if initiated by the police.

(3)     Spontaneous statements to the police are not testimonial.

(4)     Responses to preliminary questions by police at the scene of a crime while police are assessing and securing the scene are not testimonial.

*Kearney*, 181 S.W.3d at 442; *Ruth*, 167 S.W.3d at 568–69.

Here, Anna called 911 to report that appellant had injured her and that she needed emergency medical and police help. Her statements were not made in an official and formal nature. *See Kearney*, 181 S.W.3d at 442; *Ruth*, 167 S.W.3d at 568–69. As the alleged victim, Anna initiated the interaction. *See Kearney*, 181 S.W.3d at 442; *Ruth*, 167 S.W.3d at 568–69. The statements to the 911 dispatcher were made after she had been assaulted and were spontaneous. *See Kearney*, 181 S.W.3d at 442; *Ruth*, 167 S.W.3d at 568–69. Therefore, the trial court did not abuse its discretion by admitting the 911 call as it did not contain testimonial evidence. *Kearney*, 181 S.W.3d at 442; *Ruth*, 167 S.W.3d at 568–69. We overrule appellant's second issue.

**C.     Anna's Medical Records**

To preserve error for a Confrontation Clause violation, the defendant must have

specifically objected on that basis at trial. *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005); *Rojas-Antonio v. State*, 719 S.W.3d 422, 430 (Tex. App.—Corpus Christi–Edinburg 2025, no pet.) (""Confrontation Clause claims are subject to this preservation requirement."); *see also* TEX. R. APP. P. 33.1(a); *Cavil v. State*, No. 09-08-00049-CR, 2009 WL 2617780, at *3 (Tex. App.—Beaumont Aug. 26, 2009, pet. ref'd) (mem. op., not designated for publication) (concluding that appellant waived his Confrontation Clause issue because he did not object at trial on that basis). At trial, when Sanchez said Anna told her that "her husband had beat her and that she had a cut to her head," appellant only objected on the basis that the statement was hearsay. Appellant did not object on the basis that the statement was testimonial or violated the Confrontation Clause. "[A] general hearsay objection does not preserve error on Confrontation Clause grounds." *See Rojas-Antonio*, 719 S.W.3d at 431–32 (citation modified). Therefore, he did not preserve this complaint. *See id.*; *Craven v. State*, 579 S.W.3d 784, 787 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (determining that appellant did not preserve a Confrontation Clause complaint to a lab report because appellant only lodged a hearsay objection and "[n]othing about appellant's objection would have alerted the trial judge to his complaint on appeal that admitting the report violates appellant's rights under the Confrontation Clause"); *Mitchell v. State*, 238 S.W.3d 405, 409 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) ("Appellant's hearsay objection did not preserve error on his confrontation clause and due process claims."); *see also Odeku v. State*, 722 S.W.3d 76, 85 (Tex. App.—Houston [1st Dist.] 2025) (concluding that the statements made to a medical professional were non-testimonial); *Murray v. State*, 597 S.W.3d 964, 974 (Tex. App.—Austin 2020, pet. ref'd) (explaining that "[m]edical reports created for treatment

9

purposes generally are non-testimonial" and "statements to individuals who are not law enforcement officers . . . are much less likely to be testimonial") (citation modified). Appellant had "no objection" when the State offered Anna's medical records. Therefore, we conclude appellant did not preserve his complaint that the statements in Anna's medical records were testimonial. *See Reyna*, 168 S.W.3d at 179; TEX. R. APP. P. 33.1(a); *see also Cavil*, 2009 WL 2617780, at *3. We overrule appellant's third issue.

**D.    Jail Calls**

Next, appellant states, "clearly the jail phone calls were out-of-court statements and were procured by law enforcement, albeit by recording, for later prosecution. The callers were forced to use this communication system at the Jail, and the calls were kept in the system at the Sheriff's Office 'forever.'" Appellant argues "[b]ecause [he] was in custody and the phone calls were recorded and gathered for law enforcement purposes by government officials, they were testimonial in nature." Appellant has not cited authority to support his suggestion that statements made in jail phone calls are per se testimonial, and we find none. *See* TEX. R. APP. P. 38.1(i); *Taylor v. State*, 555 S.W.3d 765, 781 (Tex. App.—Amarillo 2018, pet. ref'd) (finding the appellant's brief inadequate because he failed to include citations to the record or case law to support his argument that a transcript of a phone conversation was testimonial).

Nonetheless, we disagree with appellant's implication that jail phone calls are per se testimonial. *See Michigan v. Bryant*, 562 U.S. 344, 358 (2011) (noting that "the most important instances in which [the Confrontation Clause] restricts the introduction of out-of-court statements are those in which state actors are involved in a formal, out-of-court interrogation of a witness to obtain evidence for trial"); *Williams v. State*, 606 S.W.3d 48,

58 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (rejecting the appellant's argument that a coconspirator's statement was testimonial "based on a generalized idea that all statements one inmate makes to another about a case are made with the knowledge that the statement could be available for potential use at a later criminal prosecution" and explaining that "the primary purpose of the . . . statements . . . was not to create an out-of-court substitute for trial testimony" and not per se testimonial); *see also Espinoza v. Thaler*, No. 2:11-CV-00146, 2012 WL 774989, at *8 (S.D. Tex. Mar. 8, 2012) (mem. op., not designated for publication) (agreeing that recorded telephone conversations were not testimonial because they were initiated by appellant's co-defendant, "not law enforcement, and they constituted spontaneous statements she made to private persons"); *Vargas v. State*, No. 06-02-00075-CR, 2003 WL 1338682, at *1 (Tex. App.—Texarkana Mar. 20, 2003, no pet.) (mem. op., not designated for publication) (explaining that the appellant's brief was inadequate and presented nothing for appellate review because he failed "to argue or cite authority supporting the proposition that his constitutional right to confrontation was violated under either the United States or Texas Constitutions by the trial court simply admitting the 9-1-1 tape"). "An out-of-court statement may be testimonial when the surrounding circumstances objectively indicate that the primary reason the statement was made was to establish or prove past events that would be potentially relevant to a later criminal prosecution." *Nicholls v. State*, 630 S.W.3d 443, 448 (Tex. App.—Eastland 2021, pet. ref'd) (citing *Davis v. Washington*, 547 U.S. 813, 822–23 (2006)). Here, the statements appellant made in the jail phone calls were not formal, solemn declarations, and none of the statements in the recordings were elicited by or made to any law enforcement officer or court official. *See id.* Therefore, we

11

conclude that the statements were not testimonial, and the trial court did not abuse its discretion by admitting them. *See id.* at 449–50 (holding that appellant's statements to a co-defendant were not testimonial even though they were recorded by law enforcement while appellant was in custody in the officer's vehicle); *see also Townsend v. State*, No. 03-17-00495-CR, 2018 WL 3978489, at *3 (Tex. App.—Austin Aug. 21, 2018, no pet.) (mem. op., not designated for publication) (explaining recorded statements appellant made to his co-defendant and another inmate were not testimonial as the statements "were not made to law enforcement, but between acquaintances" and "[t]he primary purpose of the recording was not to create an out-of-court substitute for trial testimony").

Moreover, appellant does not contend he was harmed by admission of this evidence. *See Chaves v. State*, 630 S.W.3d 541, 558 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (determining that appellant waived appellate argument that the trial court committed error by admitting two exhibits, because "in his brief, appellant provide[d] only two conclusory sentences, without citation to authority, asserting that he 'suffered harm as a result of the trial court's admission of'" the exhibits); *see also Adell v. State*, No. 01-21-00439-CR, 2023 WL 4938111, at *54 (Tex. App.—Houston [1st Dist.] Aug. 3, 2023, pet. ref'd) (mem. op., not designated for publication) (concluding the appellant waived his Confrontation Clause issue even though he had argued error in admission of "certain complained-of testimony and text-message evidence," because "his briefing contain[ed] no argument, explanation, substantive analysis, or citation to authorities to show that he was harmed by the trial court's purported erroneous admission"). Therefore, we cannot conclude that the trial court abused its discretion by admitting the complained-of evidence. *See Shelby v. State*, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991) (noting that

12

the United States Supreme Court concluded that "[a]fter finding a violation of the Confrontation Clause," the appellate court must then determine whether the error is harmless (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986))); *see also Davis v. State*, 581 S.W.3d 885, 895 (Tex. App.—Dallas 2019, pet. ref'd) (explaining that even assuming the trial court erred by admitting testimonial evidence, the court was "convinced, beyond a reasonable doubt, that the erroneous admission of [the] testimonial statements would probably not have had a significant impact on the mind of an average juror"). We overrule appellant's fourth issue.

### III.    Rule 901

By his fifth issue, appellant contends that the trial court abused its discretion by admitting the recordings of the jail phone calls because the voices in the recordings were not properly authenticated under Rule 901. *See* TEX. R. EVID. 901 (requiring sufficient evidence to show that an item offered is what the proponent claims it to be). Again, appellant does not argue in his brief that he was harmed; thus, he does not present any discussion, analysis and does not present authoritative citations to support a conclusion that he was harmed. Therefore, we may not reverse the judgment on this basis. *See* TEX. R. APP. P. 38.1(i); *Arevalo v. State*, 675 S.W.3d 833, 847 (Tex. App.—Eastland 2023, no pet.) ("Therefore, irrespective of having raised the issue, the omission of any substantive analysis of the harm that Appellant allegedly suffered renders the issue of harm waived."); *Campbell v. State*, 382 S.W.3d 545, 554 (Tex. App.—Austin 2012, no pet.) (concluding error pursuant to 901 was harmless because the inadmissible evidence "did not have a substantial and injurious effect on the jury's verdict"). We overrule appellant's fifth issue.

13

## IV.    EXTRANEOUS EVIDENCE

By his sixth issue, appellant contends that the trial court erroneously admitted extraneous evidence that was inadmissible pursuant to Rule 403.[5] Appellant complains that the trial court improperly admitted evidence of the following:

A March 3, 2017 alleged assault in Portland at a residence where officers heard a male voice yelling aggressively and [Anna] was observed with injuries.

An April 9, 2017 alleged assault in Portland at a residence where [Anna] met officers outside with a swollen lip and they found [appellant] in a bedroom.

An August 9, 2017 alleged assault in Portland in which [appellant] was arrested for intoxication.

An October 7, 2018 alleged assault in Corpus Christi where [appellant] ran after [Anna].

A December 19, 2018 alleged assault in Portland during a traffic stop where [Anna] was "bleeding very badly" from her head area.

### A.    Applicable Law

"To preserve error for appellate review, an appellant must present a timely complaint to the trial court stating the specific grounds for the desired ruling 'with sufficient specificity to make the trial court aware of the complaint' if it is not apparent from the context of the complaint." *Rodriguez v. State*, ___ S.W.3d ___, ___, No. 01-23-00721-CR, 2025 WL 1373693, at *11 (Tex. App.—Houston [1st Dist.] May 13, 2025, no pet.) (quoting TEX. R. APP. P. 33.1(a)(1)(A)). The Texas Court of Criminal Appeals has "consistently held that the failure to object in a timely and specific manner during trial

---

[5] "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403.

forfeits complaints about the admissibility of evidence." *Irsan v. State*, 708 S.W.3d 584, 603 (Tex. Crim. App. 2025) (quoting *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002)). "This is true even though the evidence might implicate the defendant's constitutional rights." *Id.* To preserve a complaint that the evidence violated Rule 403, the appellant must have made a specific rule 403 objection in the trial court. *Lopez v. State*, 200 S.W.3d 246, 251 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

## B.    Discussion

Gebauer testified that she went to a bar to investigate "an assault in progress," and appellant admitted that "he punched" someone. Delapaz testified that on March 3, 2017, he heard appellant aggressively screaming at his daughter and threatening to "hit" her if she continued crying and that he observed Anna had injuries. Sergeant Hodge testified that on April 9, 2017, he encountered Anna outside her residence, she had a swollen lip, and appellant was in the bedroom. Good testified that appellant had been arrested due to his "intoxication level." Gebauer testified that she was dispatched on October 7, 2018, due to "an assault in progress" and a report "that there was a male running after a female." Officer Shaw testified that on December 19, 2018, he saw that Anna "had a large cut on the left side of her head. She was bleeding from her head very badly as pooling on her shirt and she had bloody handprints on her arms."

Appellant did not object to any of the complained-of testimony on any basis. Therefore, he did not preserve this issue for appellate review. *See Rodriguez*, ___ S.W.3d at ___, 2025 WL 1373693, at *14 (holding that the appellant failed to preserve his complaint that the State's questions it asked the complainant's mother during her testimony were inadmissible pursuant to Rule 403 by failing to object on that basis at

trial); *Lopez*, 200 S.W.3d at 251 (explaining that because the appellant only raised a Rule 403 objection concerning complaint six, he did not preserve his other complaints that the evidence was inadmissible pursuant to Rule 403); Tᴇx. R. Aᴘᴘ. P. 33.1(a). We overrule appellant's sixth issue.

## V.    Cᴏɴᴄʟᴜѕɪᴏɴ

We affirm the trial court's judgment.

JAIME TIJERINA
Chief Justice

Do not publish.
Tᴇx. R. Aᴘᴘ. P. 47.2(b).

Delivered and filed on the
2nd day of April, 2026.